974 P.2d 11

**STATE of Hawai'i, Petitioner–Appellee,**

v.

**Henry ROSS, Respondent–Appellant.**

**No. 20901**

Supreme Court of Hawai'i.

Dec. 9, 1998.

Reconsideration Denied Jan. 11, 1999.

As Amended May 25, 1999.

Caroline M. Mee, Special Deputy Prosecuting Attorney, on the briefs, for petitioner-appellee.

Jon N. Ikenaga, Deputy Public Defender, on the briefs, for respondent-appellant

MOON, C.J., LEVINSON, NAKAYAMA, and RAMIL, JJ, and Circuit Judge NAKATANI in place of KLEIN, J., recused.

Opinion of the Court by NAKAYAMA, J.

We granted certiorari to review the memorandum opinion of the Intermediate Court of Appeals (ICA), filed on August 27, 1998. The ICA vacated the trial court's conviction of respondent-defendant-appellant Henry Ross (Ross) on one count of harassment and remanded for a new trial. The ICA also held that: 1) the complaint sufficiently apprised Ross of the charges against him; 2) the trial court denied Ross his right to presentence allocution; 3) the trial court improperly con-

sidered Ross's purported inability to pay a fine as a factor in imposing a jail sentence; and 4) there was sufficient evidence to support Ross's conviction. In its petition for writ of certiorari, petitioner-plaintiff-appellee State of Hawaiʻi (the prosecution) challenges solely the ICA's holding that the trial judge's failure to disqualify himself constituted reversible error. For the reasons stated below, we reverse the portion of the ICA's opinion vacating Ross's conviction based on the holding that the trial judge erred by failing to recuse himself. Because that was the sole issue raised by the prosecution on its petition for writ of certiorari, we affirm the ICA's opinion in all other respects. Ross's conviction thus stands, although his sentence remains vacated. Accordingly, we remand for resentencing of Ross before a new sentencing judge.

## I. BACKGROUND

On November 3, 1995, the prosecution filed a written complaint charging Ross with the offense of harassment for conduct during an incident occurring in a KTA store in Kamuela, Hawaiʻi, on September 14, 1995. The initial facts of the incident are undisputed. Ross went to the KTA store to buy cough drops. The cash register rang up the cough drops as $1.69 instead of the $1.23 price indicated on the display sign, and Ross protested. The cashier, Beau Schutte, offered to give Ross the sale price and sought confirmation from her manager.

At this point, the testimony at trial diverged. Schutte claimed that Ross, perturbed by the delay, yelled at her and yanked her arm several times by her wrist and forefinger. Ross maintained that Schutte initiated the contact and he grabbed her arm to protect himself. Several other store employees testified to their perceptions of the incident, and several police officers testified to comments volunteered by Ross while in custody.

During pretrial proceedings, Ross repeatedly called for the recusal of the district court judge, Judge Choi, by written and oral motion. Ross first filed a motion on April 23, 1996, requesting recusal of Judge Choi on the grounds that he had, while in private

practice, represented Ross's "opponents," several Hawaiʻi County Council members, in a suit alleging ethical misconduct brought by Ross in 1983. The judge denied the motion, stating in the May 1, 1996 hearing:

> If it is any interest to you, Mr. Ross, I didn't even recall the incident to which you referred until you brought it up. At any rate, [it] has absolutely no bearing on the Court's position or attitude in these proceedings.

On June 3, 1996, Ross filed a motion for the disqualification of Judge Choi, complaining at length about, *inter alia,* the treatment he received from the police, the vagueness of the charges brought against him, the jurisdiction of the prosecutor assigned to the case, and various adverse rulings made by the judge concerning these matters. On June 21, 1996, the judge heard oral argument on the motion and denied it on the merits. "In denying Ross's motion, the judge noted that 'the recusal order is in a sense moot because your trial is gonna [*sic*] be conducted with a different judge anyway.'"

On April 17, 1997, Ross filed a petition in this court for a writ of prohibition against Judge Choi, which this court denied on May 17, 1997. At a hearing on April 30, 1997, while the petition was still pending, Ross orally restated his motion for Judge Choi's recusal, claiming that he should not preside over the case during the pendency of the petition. The district court denied the motion, stating that "the Court is not going to recuse ... certainly not on the basis of ... the application for the writ." The judge then noted that he served as co-trustee for the Hilo Boarding School with one of the subpoenaed witnesses, Barry Taniguchi, the president of KTA Stores, but concluded that recusal was unnecessary.

> There is one other item that I ... do wish to put on the record. In reviewing the file, I notice that although Barry Taniguchi's name was not listed on the list of witnesses submitted by the defense, that there is a subpoena in the file for Mr. Taniguchi. I can only surmise that the subpoena is probably there for the purpose of trying to obtain some kind of records.

I'm not sure just exactly what role, if any, Mr. Taniguchi would play in this. My review of the records doesn't suggest any direct role for him. But the record should reflect that I am ... one of the trustees of the Hilo Boarding School, and Mr. Taniguchi is also a trustee of the Hilo Boarding School.

If we had a situation in which [I] may ... feel uncomfortable about ruling on making a ruling in the case, I would immediately recuse myself. I do not at this juncture see any reason to recuse myself so ... I'm not going to do that at this point. But I just wanted to make you aware that situation exists and that I've considered it.

At hearings on May 6 and May 27, 1997, Ross again requested that Judge Choi recuse himself. In support of his May 27 request, Ross referred to the judge's relationship to Barry Taniguchi. Ross also raised, as an additional basis for disqualification, Judge Choi's periodic sales of fish to KTA that he caught under his commercial fishing license. Acknowledging that he sold fish to KTA perhaps twelve times a year at a market price determined by auction, the judge ruled that neither the sales nor his relationship with Taniguchi required his recusal.

First of all, let's get to the issue of recusal.... [A]s the Court indicated at a prior hearing,[1] it is true that I do occasionally sell fish catch to KTA Supermarket. It's on an occasional basis. Probably something on the order of 12 times a year or something. It's not a significant income. It's incidental and the Court ... has not one iota of doubt as to whether or not I'd be able to render a decision without regard to that, the fishing. The fish is sold at market price which is established by the auction, and I could sell it at the auction or wherever it's sold. Since it doesn't make all that much difference financially, the Court feels that there's not a real reason for recusal.

I have indicated that if Mr. Taniguchi himself were going to be a percipient witness ... calling upon credibility, then that

might raise a more serious concern. My understanding is that his involvement in the case, if any, would be as custodian ... of records or having to do with internal procedures or situation within KTA rather than as a percipient witness to the event.

If there's some reason to believe that he was going to be a percipient witness, then I would recuse myself. But I don't see anything like that on the record.

. . . .

Mr. Ross, let's not get too far [a]field. I understand the argument. I've considered it. From the Court's standpoint, the level of concern would be somewhat on the order of: I shop at KTA, I like their sales; and that argument would be well, to the extent that it jeopardizes KTA's financial well-being, maybe their sale prices wouldn't be as high and I wouldn't be able to save as much money. And it's on that order of magnitude the concern is so minimal that the Court just doesn't feel that there's any basis for concern. I have no stock in the company. Actually, I don't even really know what Mr. Taniguchi's position is with KTA other than that he has some elevated position of some kind. And KTA is not party to these proceedings. I understand the concern. That's why I raised it from my ... side of the bench so to speak. Let's move on, okay.

At the conclusion of the trial, on July 10, 1997, the trial court found Ross guilty as charged. After an exchange with Ross over the appropriate penalty, the court sentenced Ross to thirty days jail, 29 days suspended because of Ross's poor health. In his explanation of the sentence, the judge noted that, as Ross demonstrated his inability to pay a fine in his continuous requests for exemptions from court fees, he would impose a jail term. The judge also commented as follows:

THE COURT: Mr. Ross, I'm sorry if I miscommunicated. Let me try to explain it to you again. In deciding what kind of sentence is appropriate—

MR. ROSS: Yes.

---

**1.** Neither party in their written submissions on appeal have identified the hearing referred to, and this court cannot find any prior mention of this matter in the record.

THE COURT:—the attitude of the defendant is very important. In other words, if the defendant is genuinely contrite about what they have done, if they're genuinely sorry, it makes a big difference.

If we have a defendant who stands before the court defiant to the end, we sentence accordingly. And it's the Court's view that you have exhibited overpowering arrogance through this whole proceeding, and it has not abated; and the Court's view is that the sentence should reflect that.

Your testimony is not credible. [T]here have been all kinds of dilatory motions. I can't think of a case ... that calls ... more appropriately for having you sentenced to a full jail term. And as I ... indicated, the only reason I'm suspending a portion of it is because of your health.[2]

Ross timely appealed. On appeal, Ross argued, *inter alia*, that Judge Choi erred by not recusing himself because: 1) his connections with KTA created, "at a minimum," an appearance of impropriety; and 2) Judge Choi had personal bias against Ross. After the filing of the notice of appeal, the district court continued to schedule hearings described by the judge as "normal procedure." According to the judge, the purpose of these hearings was to ensure that the case "[did]n't slip through the cracks."

The ICA, via memorandum opinion, vacated the trial court's judgment. Citing *State v. Brown*, 70 Haw. 459, 776 P.2d 1182 (1989), for the proposition·that the "appearance of unfairness may suffice to require a judge to recuse himself or herself from sitting on a case," the ICA stated:

> We believe that the court's admitted vendor relationship with KTA, the apparent past and present employer of the complainant and all the lay witnesses, in a case involving a transaction between KTA and Defendant, would fairly give rise to an appearance of impropriety, even if in fact the court had no actual bias.

The ICA also ruled that the trial court denied Ross's right to presentence allocution and improperly considered Ross's purported inability to pay a fine as a factor in imposing a jail sentence. The ICA further held that the State sufficiently apprised Ross of the charge against him in its written complaint and that sufficient evidence was adduced to support Ross's conviction.

The prosecution filed a petition for a writ of certiorari, arguing exclusively that the ICA erred in vacating the judgment of the trial court based on Judge Choi's refusal to recuse himself. We granted certiorari. The prosecution argues that Judge Choi had a negligible relationship with KTA, which did not mandate his recusal. Ross, in a supplemental brief to this court, argues that Judge Choi's relationship to KTA stores created an appearance of impropriety requiring recusal, apart from the question of whether actual bias or conflict of interest existed.

## II. STANDARD OF REVIEW

We have not previously articulated the appropriate standard of review for a judge's denial of a motion for recusal or disqualification. Decisions relating to the conduct of a trial or hearing and the adequacy of process usually involve the exercise of discretion, and thus warrant review under the abuse of discretion standard on appeal. *See, e.g., Kawamata Farms, Inc. v. United Agri Products*, 86 Hawai'i 214, 245, 948 P.2d 1055, 1086 (1997) (trial court's ruling on a motion for mistrial reviewed under abuse of discretion standard). Decisions on recusal or disqualification present perhaps the ultimate test of judicial discretion and should thus lie undisturbed absent a showing of abuse of that discretion. As one court stated:

> [T]he jurist requested to recuse himself is the most capable to determine those factors hidden in the recesses of the mind and soul which would bear upon his or her capability to maintain the impartiality that each matter must receive.... The deci-

---

2. The court had also commented, at a pretrial hearing in which the court denied Ross's motion for a bill of particulars, that "with the information that has been given to you, there can be little, if any doubt, in the minds of a literated [sic] person what the nature of the charges ... alleged."

sion of that judge is final, subject to review only for an abuse of that discretion.

*Goodheart v. Casey,* 523 Pa. 188, 565 A.2d 757, 763 (Pa.1989) (citation omitted). *See also United States v. Rogers,* 119 F.3d 1377, 1380 (9th Cir.1997) ("We review the denial of a motion for disqualification for abuse of discretion."); *United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992) ("Since recusal motions are committed to the sound discretion of the district court, ... the issue on appeal is whether the court abused its discretion."); *Gulf Maritime Warehouse Co. v. Towers,* 858 S.W.2d 556, 558 (Tex.App.1993) ("A judge's refusal to recuse is viewed on appeal by an abuse of discretion standard."). We accordingly adopt the abuse of discretion standard for reviewing a judge's denial of a motion for recusal or disqualification.

## III. DISCUSSION

Hawai'i Revised Statutes (HRS) § 601–7 (1993) governs the disqualification of judges in this state. The provision reads as follows:

**Disqualification of judge; relationship, pecuniary interest, previous judgment, bias or prejudice.** (a) No person shall sit as a judge in any case in which the judge's relative by affinity or consanguinity within the third degree is counsel, or interested either as a plaintiff or defendant, or in the issue of which the judge has, either directly or through such relative, any pecuniary interest; nor shall any person sit as a judge in any case in which the judge has been of counsel or on an appeal from any decision or judgment rendered by the judge.

(b) Whenever a party to any suit, action, or proceeding, civil or criminal, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against the party or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time.

No party shall be entitled in any case to file more than one affidavit; and no affidavit shall be filed unless accompanied by a certificate of counsel of record that the affidavit is made in good faith. Any judge may disqualify oneself by filing with the clerk of the court of which the judge is a judge a certificate that the judge deems oneself unable for any reason to preside with absolute impartiality in the pending suit or action.

The Code of Judicial Conduct (Revised) (1992) (CJC) offers additional guidelines for the conduct of judges that relate to the disqualification of a judge. Canon 2 of the CJC sets forth the broad mandate that "a judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities." Speaking directly to disqualification, Canon 3(E) states in pertinent part:

**DISQUALIFICATION.** (1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it;

(c) the judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than de minimis interest that could be substantially affected by the proceeding;

. . . .

In *State v. Brown,* 70 Haw. 459, 776 P.2d 1182 (1989), this court applied these provisions to a specific instance of alleged trial court bias, ruling that a judge may not pre-

side over a contempt trial in a non-summary contempt situation, where the judge indirectly caused the contempt charge to be instituted for conduct of which the judge had no personal knowledge. We observed that, although HRS § 601–7 did not expressly forbid the judge to sit in judgment of the accused, "no one would argue seriously that the disqualification of judges on grounds of actual bias, kinship, pecuniary interest, and prior involvement prevents unfairness in all cases." *Id.* at 467, 776 P.2d at 1187. Inasmuch as a trial by the same judge who brought about the charge "offers a temptation to the judge to forget that proof beyond a reasonable doubt shall be required for conviction," we held, on due process grounds, that a different judge must preside over the trial. *Id.* at 467, 776 P.2d at 1187–88 (citation and internal quotes omitted). We qualified our holding, however, with the reminder that

> a judge owes a duty not to withdraw from a case—howevermuch his personal feelings may incline him to do so—where the circumstances do not *fairly* give rise to an appearance of impropriety and do not *reasonably* cast suspicion on his impartiality.

*Id* at 467 n. 3, 776 P.2d at 1188 n. 3 (emphases in original).

■ The *Brown* opinion, therefore, suggested a two-part analysis for disqualification or recusal cases. In the first part, HRS § 601–7 is applied to determine whether the alleged bias is covered by any of the specific instances prohibited therein. As we acknowledged in *Brown*, HRS § 601–7 covers many types of disqualifying bias or conflicts of interest, *see, e.g., Schutter v. Soong*, 76 Hawai'i 187, 873 P.2d 66 (1994) (upholding the trial court's refusal to recuse pursuant to HRS § 601–7(b)); *Carey v. Discount Corp.*, 35 Haw. 811 (1941) (disqualifying the judge under the predecessor of HRS § 601–7(a)), but does not encompass all potential trial court bias. *Brown*, 70 Haw. at 467, 776 P.2d at 1187. If the alleged bias falls outside of the provisions of HRS § 601–7, the court may then turn, if appropriate, to the notions of due process described in *Brown* in con-

ducting the broader inquiry of whether "circumstances ... fairly give rise to an appearance of impropriety and ... reasonably cast suspicion on [the judge's] impartiality." *Brown*, 467 n. 3, 776 P.2d at 1188 n. 3.

## A. *Disqualification under HRS § 601–7*

In his initial written submissions on appeal, Ross argued that Judge Choi harbored an actual personal bias against him. Reversing Ross's conviction based on the "appearance of impropriety" created by Judge Choi's connections with KTA, the ICA did not rule on Ross's personal bias claims. In our review of the ICA's decision, therefore, we must address the issues of personal bias raised by Ross in his appeal.[3]

■ HRS § 601–7(b) sets forth the appropriate procedure for seeking disqualification because of personal bias. The statute requires the movant to timely file an affidavit "stat[ing] the facts and reasons for the belief that bias or prejudice exists." *Id.* "[A] judge whose disqualification is sought must take the facts alleged as true, but can pass upon whether they are legally sufficient." *State v. Mata*, 71 Haw. 319, 325, 789 P.2d 1122, 1126 (1990). When the affidavit to disqualify refers to matters of record, however, we may consider the entire record in making our determination. *Schutter*, 76 Hawai'i at 205, 873 P.2d at 84 (citing *Peters v. Jamieson*, 48 Haw. 247, 257, 397 P.2d 575, 582 (1964)). "The reasons and facts for the belief the [affiant] entertains ... must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *Whittemore v. Farrington*, 41 Haw. 52, 57 (1955) (citation omitted). The test assumes the viewpoint of a reasonable onlooker, rather than the subjective belief of the judge. *See Yorita v. Okumoto*, 3 Haw.App. 148, 153, 643 P.2d 820, 825 (1982).

■ In support of his allegations of personal bias, Ross largely repeats the substance of his June 3, 1996 motion for disqualification, referring to various adverse rulings by Judge Choi, as well as numerous aspects

---

**3.** As we noted above, the HRS § 601–7 analysis must, out of logical necessity, precede any inquiry into the "appearance of impropriety."

of the prosecutorial process: from the conduct of the police and prosecutors, to the jurisdiction of the prosecuting attorney, to the wording of the criminal charge. Ross suggests that Judge Choi's failure to respond favorably to Ross's objections evinces bias. We have long recognized, however, that petitioners may not predicate their claims of disqualifying bias on adverse rulings, even if the rulings are erroneous. *See Peters*, 48 Haw. at 257, 397 P.2d at 583; *James W. Glover, Ltd. v. Fong*, 39 Haw. 308, 315–16 (1952). The "evidence" offered by Ross "do[es] not even involve matters of any personal interest to the [judge]. They concern primarily matters affecting his exercise of judicial discretion[.]" *Glover*, 39 Haw. at 315. We thus hold that Judge Choi did not abuse his discretion in denying Ross's June 3, 1996 motion for disqualification.[4]

■ Ross points to additional evidence in the record of the trial court's personal bias. Judge Choi allegedly insulted Ross, implying that Ross did not understand the charges because he was not "literated" and calling him "arrogant" at the sentencing. According to Ross, Judge Choi also accused him of filing dilatory motions and fabricating his testimony. Although Judge Choi admitted to allowing other defendants to pay fines in installments, he refused make similar arrangements for Ross and sentenced him to jail. Finally, after the filing of the notice of appeal, Judge Choi scheduled hearings so the case would not "slip through the cracks."

Ross's failure to raise these points with Judge Choi below does not prevent this court from considering his disqualification claim based on matters of record. *Peters*, 48 Haw. at 263, 397 P.2d at 585–86 ("[D]isqualification may appear on the record and does not necessarily rest on the filing of an affidavit of bias or prejudice."). We have considered similar appeals in the context of contempt

proceedings. In *Schutter*, we stated that a judge should not preside over the trial

[w]here the record reflects marked personal feelings on both sides in inflicting lingering personal stings on the judge (i.e., where the case conveys an apparent flavor of animosity on the part of the judge against counsel, such that the citing judge manifestly loses his or her capacity to perform judicial duties without bias or prejudice).

*Id.* at 205, 873 P.2d at 84. (citing *Evans v. Takao*, 74 Haw. 267, 291–292, 842 P.2d 255, 266 (1992)) (internal quotations and ellipses omitted).

■ The statements and conduct Ross refers to fall far short of the kind of "marked personal feelings on both sides inflicting lingering personal stings" necessary to establish bias. Judge Choi's statement that a "literated" person would understand the nature of the charges referred to Ross only indirectly and was not indicative of any bias against Ross. Judge Choi made his comments regarding Ross's "arrogance," "dilatory" motions, and "not credible" testimony during the judge's explanation of the sentence at the sentencing hearing. HRS § 706–606 provides that the judge may consider a wide variety of factors in imposing the sentence, including "the history and characteristics of the defendant," and this court "strongly encourage[s] and recommend[s] that the sentencing court state its reasons for imposing the particular sentence," *Gray v. Administrative Dir. of the Court*, 84 Hawai'i 138, 146, 931 P.2d 580, 588 (1997) (citations and ellipses omitted), in order to facilitate appellate review. The trial court thus properly incorporated its observations of Ross's character and behavior into its explanation of the sentence—observations that, in our view, are unbiased and amply supported by the record.

■ Although the ICA noted that the trial court appeared to consider Ross's sup-

---

4. Ross emphasizes that Judge Choi, during the hearing in which he denied Ross's motion, noted that "the recusal order is in a sense moot because your trial is gonna be conducted with a different judge anyway." The record does not indicate what part, if any, this observation played in Judge Choi's decision. Nevertheless, because we hold that Ross's June 3, 1996 motion was without merit, we need not concern ourselves with this question. "An appellate court may affirm a judgment of the lower court on any ground in the record that supports affirmance." *Poe v. Hawai'i Labor Relations Bd.*, 87 Hawai'i 191, 197, 953 P.2d 569, 575 (1998) (citation omitted).

posed inability to pay a fine as a factor in determining the sentence,[5] Judge Choi, based on a multitude of factors other than Ross's impecuniousness, explained that he couldn't "think of a case … that calls … more appropriately for having you sentenced to a full jail term." Following the rule that adverse rulings, even if erroneous, do not establish bias, *Peters*, 48 Haw. at 257, 397 P.2d at 583, and considering Judge Choi's explanation of Ross's sentence as a whole, we hold that the imposition of the jail sentence did not demonstrate bias on the part of Judge Choi.

Finally, although the trial court continued to schedule hearings after the filing of the appeal, the court described the measure as "normal procedure … just to keep track of [the case]," and explained that Ross need not personally appear. We find no evidence in the record that the trial court invented or abused this procedure out of animosity towards Ross. We thus hold that these post-appeal hearings, like the other conduct of the trial court protested by Ross, do not establish trial court bias requiring the reversal of Ross's conviction.

### B. *Appearance of Impropriety*

Apart from any questions of personal bias or conflict of interest, Ross argues that Judge Choi's ties to KTA—specifically, his acquaintance with a subpoenaed witness, Barry Taniguchi, president of KTA, and his sales of fish to KTA—created an "appearance of impropriety" requiring his recusal.[6] Ross extrapolates his argument from language in the CJC,[7] as well as various references to the "appearance of impropriety" in our case law, *see, e.g., Brown*, 70 Haw. at 467 n. 3, 776 P.2d at 1188 n. 3; *State v. Kauhi*, 86 Hawai'i 195, 198, 948 P.2d 1036, 1039 (1997) (disqualification of juror required under "appearance of impropriety test"). Holding that the sales of fish in particular created the "appearance of impropriety," the ICA reversed Ross's conviction.

We held in *Brown* that due process required disqualification where circumstances gave rise to the "probability of unfairness" and "temptation to the judge to forget" the proof beyond a reasonable doubt requirement. *Id.* at 467, 776 P.2d at 1187–88. In our decision, we referred to the CJC and the general principle that "justice must satisfy the appearance of justice." *Id.* at 467, 776 P.2d at 1188 (citing *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)). *Cf. Sussel v. Civil Serv. Comm'n*, 71 Haw. 101, 784 P.2d 867 (1989) (ruling that the "appearance of impropriety" required the disqualification of an administrative adjudicator). We thus recognized that, aside from the technical absence of bias or conflict of interest, certain situations may give rise to such uncertainty concerning the ability of the judge to rule impartially that disqualification becomes necessary. *See Brown*, 70 Haw. at 467, 776 P.2d at 1187–88. *See also Honolulu Roofing Co. v. Felix*, 49 Haw. 578, 618, 426

---

5. As the prosecution does not contest this determination on appeal, we do not examine it in this opinion.

6. We initially note that Judge Choi's ties to KTA do not disqualify him under HRS § 601-7(a). HRS § 601-7(a) mandates disqualification based on kinship, pecuniary interest, and prior involvement. Barry Taniguchi is a mere acquaintance, not a relative of Judge Choi, and Judge Choi's sales of fish to KTA did not constitute a pecuniary interest in Ross's prosecution for criminal harassment.

7. CJC Canon 3(E)(1) states that the judge "shall disqualify himself or herself in a proceeding *in which the judge's impartiality might reasonably be questioned, including but not limited to* [the enumerated instances]." (Emphasis added.) The commentary to this section confirms that disqualification is necessary "regardless whether any of the specific rules in Section 3E(1) apply."

Along these same lines, CJC Canon 2 sets forth the general mandate that a "judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities."

The CJC, however, does not provide Ross with the legal authority to demand Judge Choi's disqualification or to overturn his conviction for the judge's failure to disqualify himself. The Preamble of the CJC makes explicit that:

> The Code is designed to *provide guidance to judges and to provide a structure for regulating conduct through disciplinary agencies.* It is not designed or intended as a basis for civil liability or criminal prosecution. Furthermore, the purpose of the Code would be subverted if the Code were invoked by lawyers for mere tactical advantage in a proceeding.

(Emphasis added.)

P.2d 298, 323 (1967) ("[T]here may be circumstances that cast suspicion on the fairness of the judge ... so that it may be advisable for a judge not technically disqualified to withdraw *sua sponte.*") (Citing *In re Bouslog*, 41 Haw. 270, 283 (1956).).

■ In *Brown*, however, we noted that a judge should not disqualify himself or herself where "the circumstances do not *fairly* give rise to an appearance of impropriety and do not *reasonably* cast suspicion on his impartiality." *Id.* at 467, n. 3, 776 P.2d at 1188, n. 3 (emphases in original). Similarly, CJC Canon 3(E)(1) limits recusal to situations where "the judge's impartiality might *reasonably* be questioned" (emphasis added), and the commentary to CJC Canon 2 states that "[t]he test for appearance of impropriety is whether the conduct would create in *reasonable* minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired" (emphasis added). Consistent with this language, we hold that the test for disqualification due to the "appearance of impropriety" is an objective one, based not on the beliefs of the petitioner or the judge, but on the assessment of a reasonable impartial onlooker apprised of all the facts.

Other courts, interpreting a federal statute that contains terms similar to the CJC, mandating recusal where the judge's impartiality "might reasonably be questioned," *see* 28 U.S.C. § 455 (1988), have also decided that courts must apply an objective standard to questions of disqualification. *See e.g., United States v. Rogers*, 119 F.3d 1377, 1383 (9th Cir.1997) ("[W]e have ... recognized that what is required is a reasonable factual basis for doubting the judge's impartiality."). In the words of the United States Court of Appeals for the Second Circuit:

> In deciding whether or not to affirm a judge's denial of a recusal motion, a court of appeals must ask the following question: Would a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain

significant doubt that justice would be done absent recusal?

*United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir.1992) (citations omitted).

■ Viewing the circumstances of this case through this objective lens, we hold that they did not create an appearance of impropriety requiring Judge Choi's recusal. Regarding his acquaintance with Barry Taniguchi, Judge Choi explained that, as Taniguchi was apparently not going to testify as a percipient witness, the relationship would not affect his ability to preside over Ross's trial. Judge Choi further noted that he did not even know in what capacity Taniguchi worked for KTA, just that he had "some elevated position of some kind." Taniguchi ultimately did not testify at Ross's trial.

■ Judge Choi also acknowledged that he sold fish to KTA about twelve times a year. As the judge explained, however, he sold the fish at an auction, and the market determined the selling price. Judge Choi thus only had an intermittent, arms-length business relationship with KTA.

More significantly, however, Judge Choi's connections to KTA had no relation to the present controversy, Ross's trial for criminal harassment. The ICA concluded that, because KTA employed all the lay witnesses and the incident "involved KTA's business and the conduct of KTA's employees in the scope of their employment," Judge Choi's admitted "vendor relationship" with KTA created an appearance of impropriety. We disagree. As Judge Choi pointed out, KTA was not a party to the present action. The offense charged, criminal harassment, concerned the individual victim, Beau Schutte, and not any financial or property interest of KTA. Judge Choi personally had nothing to gain by finding Ross guilty. The outcome of Ross's trial for criminal harassment would have no impact on the price the judge received for his fish.

We recognized in *Brown* that the "appearance of impropriety" may still require recusal even absent bias in fact. Nevertheless, "bad appearances alone do not require disqualification. Reality controls over uninformed perception." *Del Vecchio v. Illinois Dept. of*

*Corrections,* 31 F.3d 1363, 1372 (7th Cir. 1994). The integrity of the judicial process depends on "justice … satisfy[ing] the appearance of justice." *Brown,* 70 Haw. at 467, 776 P.2d at 1188. Our judicial system, however, also rests on the premise that "the law will not suppose a possibility of bias or favour in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea." *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 820, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (quoting 3 W. Blackstone, Commentaries 361). While the principle that "justice must satisfy the appearance of justice" exhorts judges to "hold the balance nice, clear and true," *Id.* at 822, 106 S.Ct. 1580 (citation omitted), it does not invite any party concerned about or dissatisfied with the outcome of a case to seek a different judge.

> [I]n the real world, "possible temptations" to be biased abound. Judges are human; like all humans, their outlooks are shaped by their lives' experiences. It would be unrealistic to suppose that judges do not bring to the bench those experiences and the attendant biases they may create. A person could find something in the background of most judges which in many cases would lead that person to conclude that the judge has a "possible temptation" to be biased. But not all temptations are created equal. We expect—even demand—that judges rise above these potential biasing influences, and in most cases we presume judges do.

*Del Vecchio,* 31 F.3d at 1372 (citation omitted).

We hold that, as Judge Choi had a negligible relationship with KTA and KTA had no interest in the present action, a reasonable observer would not find that Judge Choi's connections with KTA created an "appearance of impropriety" requiring his disqualification. The trial court therefore did not abuse its discretion in denying Ross's motion for disqualification based on the "appearance of impropriety." [8]

8. Ross assigns particular significance to Judge Choi's assertion that he mentioned his sales of fish to KTA in a previous hearing, although no such reference appears in the record. In light of

Accordingly, we reverse the part of the ICA's decision vacating Ross's conviction due to the appearance of impropriety. Because that is the sole issue raised by the prosecution on the petition for the writ of certiorari, we affirm in all other respects. Ross's conviction thus stands, although his sentence remains vacated. As we did in similar circumstances in *Schutter,* we remand for resentencing before a new sentencing judge. *See id.* at 208, 873 P.2d at 87 (remanding for resentencing before a new sentencing judge where the trial court denied the defendant's right to presentence allocution).

## IV.  CONCLUSION

For the foregoing reasons, we reverse the portion of the ICA's opinion concluding that the trial court erred by denying Ross's motion for Judge Choi's recusal, affirm the remaining portions of the ICA's opinion, and remand for resentencing of Ross before a new sentencing judge.

the triviality of the challenged interest, however, we interpret Judge Choi's initial silence and subsequent apparent mistatement as accidental and ultimately immaterial.