22 P.3d 968

**STATE of Hawai'i, Plaintiff–Appellee–Respondent,**

v.

**Wayne RAPOZA, Defendant–Appellant–Petitioner.**

No. 22382.

Supreme Court of Hawai'i.

May 11, 2001.

322

Joyce K. Matsumori–Hoshijo, on the writ, for the defendant-appellant-petitioner Wayne Rapoza.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by LEVINSON, J.

We granted the defendant-appellant-petitioner Wayne Rapoza's application for a writ of certiorari in order to review the memorandum opinion of the Intermediate Court of Appeals (ICA) in *State v. Rapoza*, No. 22382 (Haw.Ct.App. Mar. 7, 2001) [hereinafter, the "ICA's opinion"]. The ICA's opinion affirmed in part and vacated in part the first circuit court's judgment of conviction of and sentence for two firearm offenses (two

counts) and the offenses of attempted assault in the first degree (two counts), in violation of Hawai'i Revised Statutes (HRS) §§ 705–500 (1993) [1] and 707–710 (1993),[2] and reckless endangering in the first degree (one count), in violation of HRS § 707–713 (1993),[3] filed on March 8, 1999.

In his application, Rapoza contends that the ICA's opinion contains two grave errors of law. First, Rapoza argues that the ICA erroneously held that the circuit court's jury instructions regarding criminal attempt liability and the conduct element of attempted first degree assault did not constitute reversible error as to counts 2 (charging attempted second degree murder) and 4 (also charging attempted second degree murder). Second, Rapoza asserts that the ICA erroneously held that the circuit court's allegedly erroneous failure to instruct the jury that it must unanimously agree on the facts constituting the requisite conduct element of the offenses charged and included within counts 2, 3 (charging attempted second degree murder), and 4, *see State v. Arceo,* 84 Hawai'i 1, 928 P.2d 843 (1996), was harmless beyond a reasonable doubt.

We wish to clarify the ICA's analysis. regarding the circuit court's jury instructions in connection with criminal attempt liability and to correct the ICA's misapplication of *Arceo,* the material holding of which is simply not implicated by the facts of the present matter. Accordingly, we affirm the ICA's opinion, subject to our discussion *infra. See State v. Ross,* 89 Hawai'i 371, 378 n. 4, 974 P.2d 11, 18 n. 4 (1999) ("An appellate court may affirm a judgment of the lower court on any ground in the record that supports affirmance.").

## I.  *BACKGROUND*

On February 20, 1998, Rapoza discharged a firearm five to seven times in the span of a few seconds while pointing it in the general direction of (1) Manuel Galarza, (2) Manuel's wife, Louise, and (3) the Galarza's son, Brandon. ICA's opinion at 3–4. A short time before Rapoza discharged the firearm, Manuel was forced to dodge out of the way of Rapoza's vehicle as Rapoza drove out of the Galarzas' driveway.

In connection with the foregoing conduct, Rapoza was charged with seven offenses. Count 1 charged Rapoza with committing the offense of attempted first degree murder, in violation of HRS §§ 705–500 and 707–701(1)(a) (1993) (count 1), and alleged that he had attempted to murder more than one person. Counts 2, 3, 4, and 5 each accused Rapoza of attempting to commit the offense of second degree murder, in violation of HRS §§ 705–500 and 707–701.5 (1993); counts 2, 3, and 4 alleged that Rapoza attempted, respectively, to murder Manuel, Louise, and Bran-

---

1. HRS § 705–500 provides as follows:
   **Criminal attempt.**  (1) A person is guilty of an attempt to commit a crime if the person:
   (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or
   (b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.
   (2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.
   (3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

2. HRS § 707–710 provides in relevant part that "[a] person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person." Pursuant to HRS § 707–700 (1993), "'[s]erious bodily injury' means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." "'Bodily injury' means physical pain, illness, or any impairment of physical condition." *Id.*

3. HRS § 707–713 provides in relevant part that "[a] person commits the offense of reckless endangering in the first degree if the person employs widely dangerous means in a manner which recklessly places another person in danger of death or serious bodily injury or intentionally fires a firearm in a manner which recklessly places another person in danger of death or serious bodily injury."

don by discharging the firearm; count 5 alleged that Rapoza attempted to murder Manuel by striking him with the automobile. Counts 6 and 7 each charged a firearms offense.

Prior to trial, Rapoza pled guilty to the firearms offense charged in count 6. Subsequent to a trial on the remaining charges, a jury acquitted Rapoza of the attempted murder offenses, found him guilty of included offenses with respect to counts 2, 3, and 4, and guilty as charged of the firearms offense in count 7. Relevant to his present application, the jury found Rapoza guilty of the included offenses of attempted first degree assault, *see supra* notes 1 and 2, in connection with counts 2 (Manuel) and 4 (Brandon) and first degree reckless endangering, *see supra* note 3, in connection with count 3 (Louise). The ICA subsequently vacated Rapoza's conviction of and sentence for attempted first degree assault as to Brandon.[4]

With regard to criminal attempt liability, the circuit court, without objection from Rapoza, generally instructed the jury as follows:

A person is guilty of an attempt to commit a crime if he intentionally engages in conduct which, *under the circumstances as he believes them to be,* constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime.

When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, he intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

Conduct shall not be considered a substantial step under these—under this section unless it is strongly corroborative of the defendant's criminal intent.

(Emphasis added.) The circuit court repeated the instruction contained in the final paragraph quoted above (hereinafter, the "strongly corroborative instruction") four times. With regard to count 1, however, the circuit court, over Rapoza's objection,[5] interwove the strongly corroborative instruction into its instruction regarding the charged offense of attempted first degree murder, specifically tailoring it to the charge as follows: "[c]onduct shall not be considered a substantial step unless it is strongly corroborative of the defendant's intent to commit Murder in the First Degree."[6] After instructing the jury that, if it acquitted Rapoza of attempted first degree murder as charged in count 1, it could then consider the charges contained in counts 2, 3, 4, and 5, the circuit court, without objection from Rapoza, again instructed the jury that "[c]onduct shall not be considered a substantial step unless it is strongly corroborative of the defendant's intent to commit Murder in the Second Degree, which is intentionally or knowingly causing the death of another person." Finally, the circuit court, over Rapoza's objection, *but see supra* note 5, included the strongly corroborative instruction, tailored to each offense, in its jury instructions regarding attempted first and second degree assault, as offenses included within attempted second degree murder, as charged in count 2. However, over Rapoza's objection, *but see supra* note 5, the circuit court did not include the strongly corroborative instruction in its subsequent instructions regarding the attempt offenses charged and included in counts 3, 4, and 5. During deliberations, the jury posed the following question to the circuit court: "What is the definition of 'strongly corrobo-

---

**4.** The prosecution conceded on appeal that the circuit court committed reversible error in failing to instruct the jury that self-defense was a defense to the offense of attempted first degree assault, which was included in count 4. Confirming the prosecution's confession of error, the ICA vacated Rapoza's conviction with regard to count 4 and remanded for a new trial on the included offense of attempted first degree assault. ICA's opinion at 11–12.

**5.** The bases for Rapoza's objections in the circuit court to this and other instructions, as noted *infra* herein, during the settling of jury instructions, is not entirely clear from the record.

**6.** More specifically, the circuit court instructed the jury regarding the elements of attempted first degree murder, then gave the strongly corroborative instruction, and then instructed the jury regarding the elements of first degree murder.

rative'?" Without objection from Rapoza, the circuit court responded that the jury had "received all of the evidence in this case" and referred the jury to the court's written instructions.

With regard to unanimity, Rapoza did not request, and the circuit court did not give, any specific instruction modeled after this court's holding in *Arceo.* However, the circuit court generally instructed the jury that its verdict as to any given count must be unanimous.

On appeal, Rapoza asserted, *inter alia,* that the circuit court's jury instructions regarding criminal attempt liability and the conduct element of the charged and included attempt offenses constituted reversible error and that the circuit court had plainly erred in failing to give a jury instruction modeled after this court's holding in *Arceo;* Rapoza specifically argued that the circuit court's failure to give the strongly corroborative instruction when instructing the jury regarding the elements of the attempt offenses charged and included in count 4, where the circuit court had given the strongly corroborative instruction with respect to the attempt offenses charged and included in count 2, rendered the circuit court's instructions as a whole "prejudicially confusing." Rapoza also argued that the circuit court erred in not "meshing" the strongly corroborative instruction into its instructions regarding the conduct elements of each charged and included attempt offense. Similarly, Rapoza argued that the circuit court erred in instructing the jury with respect to the included offenses of attempted first and second degree assault as to counts 2 and 4 because it had not instructed that "[a] person commits the offense ... if he intentionally engaged in conduct which, *under the circumstances as he believes them to be* [,] is a substantial step in [a] course of conduct intended or known to cause" the result required by each offense. (Emphasis in original.) Indeed, the circuit court omitted the underscored phrase from its instructions. Finally, Rapoza argued on appeal that the circuit court plainly erred in failing to instruct the jury that it must "unanimously agree on which act constituted the conduct element" requisite to the offenses charged and included within counts 2, 3, and 4 be-

cause the testimony adduced from the prosecution's witnesses "presented [the jury] with six different versions of Rapoza's conduct during the shooting incident."

The ICA's opinion held, *inter alia,* that the circuit court's jury instructions regarding criminal attempt liability and the requisite conduct element of the charged and included attempt offenses were not reversibly erroneous. ICA's opinion at 12–16. The ICA's opinion also held that, although the circuit court had erred in failing to instruct the jury that, "if the jury decided beyond a reasonable doubt that [Rapoza] fired one or more shots at or toward a specified [complainant], all twelve [jurors] must agree on the same shot(s) that were fired," the error was nonetheless harmless beyond a reasonable doubt. *Id.* at 19–20. On this point, the ICA reasoned that Rapoza

> did not dispute that he shot in the general direction of the three alleged [complainants]. He disputed other material elements. For example, [Rapoza] argued that he was acting in self-defense or that he was not acting intentionally or knowingly. In the words of defense counsel in closing argument,
>
> > Is it strongly corroborative that [Rapoza] was shooting above people's heads, not aiming, that he was trying to kill Louise or Manuel or trying to kill Brandon? No.
> >
> > Is it strongly corroborative that he was trying to commit an Assault in the First Degree or inflict serious bodily injury on them by shooting over their heads? No.
> >
> > Is it strongly corroborative that he was trying to commit Assault in the Second Degree causing substantial bodily injury with a dangerous instrument? No.
> >
> > . . . .
> >
> > Okay. [Rapoza] was a shooting gun. He knew—he was aware that his conduct was pulling the trigger. Yeah, that[ ] satisfied [the] attendant circumstances [element], aware[ness that the] circumstances exist[ed]. He was aware that he was shooting a gun.

Thus, in contrast to the situation in *Arceo,* the trial court's errors in [Rapoza's] case were not plain errors. They did not affect his substantial rights. They were harmless beyond a reasonable doubt. There was no reasonable possibility that the court's errors contributed to the convictions.

*Id.* at 20.

Further facts will be discussed below where necessary.

## II. *STANDARDS OF REVIEW*

### A. *Certiorari From The Intermediate Court Of Appeals*

Appeals from the ICA are governed by HRS § 602–59(b) (1993), which provides that an "application for writ of certiorari shall tersely state its grounds which must include (1) grave errors of law or of fact, or (2) obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decisions, or its own decision, and the magnitude of such errors or inconsistences dictating the need for further appeal."

### B. *Harmless And Plain Error Within The Context Of Jury Instructions*

■ When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. . . .

[E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.

[E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that the error may have contributed to conviction. . . .

. . . . If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside. . . .

*State v. Valentine,* 93 Hawai'i 199, 204, 998 P.2d 479, 484 (2000) (citations and internal quotation signals omitted) (brackets in original). Inasmuch as "the ultimate responsibility properly to instruct the jury lies with the [trial] court," if trial or appellate counsel fail to raise an objection to an erroneous jury instruction as to which there is a reasonable possibility of contribution to the defendant's conviction and which, consequently, cannot be harmless beyond a reasonable doubt, then the instruction, by its very nature, has affected the defendant's substantial rights—to wit, his or her constitutional rights to a trial by an impartial jury and to due process of law— and, therefore, may be recognized as plain error. *Id.* at 205, 998 P.2d at 485 (citations omitted); *see State v. Jenkins,* 93 Hawai'i 87, 101, 997 P.2d 13–27 (2000) ("We may recognize plain error when the error committed affects substantial rights of the defendant.") (Quoting *State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997)); Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); *see also State v. Haanio,* 94 Hawai'i 405, 414–16, 16 P.3d 246, 255–57 (2001) (distinguishing plain from harmless error in the context of jury instructions regarding included offenses).

### C. *Statutory Interpretation*

■ "[T]he interpretation of a statute . . . is a question of law reviewable *de novo.*" . . . *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (quoting *State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930, *reconsideration denied,* 79 Hawai'i 341, 902 P.2d 976 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704, *reconsideration denied,* 76 Hawai'i 453, 879 P.2d 558 (1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

*Gray v. Administrative Director of the Court, State of Hawai'i*, 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto*, 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> . . . .

*Gray*, 84 Hawai'i at 148, 931 P.2d at 590 (quoting *State v. Toyomura*, 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS, § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*State v. Rauch*, 94 Hawai'i 315, 322–23, 13 P.3d 324, 331–32 (2000) (quoting *State v. Kotis*, 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999))(ellipsis points in original).

## III. *DISCUSSION*

### A. *Jury Instructions Regarding Criminal Attempt Liability*

In his application, Rapoza argues that, in two respects, the ICA's opinion gravely errs in its analysis of the circuit court's jury instructions regarding criminal attempt liability. First, Rapoza asserts that the ICA erroneously held that the circuit court's failure to "combine" the strongly corroborative instruction with its instructions regarding the conduct element of attempted first degree assault, as an included offense of the offense charged in count 2, rendered the circuit court's instruction with respect to this offense misleading and confusing. Second, Ra-

poza asserts that the ICA erroneously held that the circuit court's failure to include the strongly corroborative instruction in its instructions regarding the offenses of attempted first and second degree assault, as included in the offense charged in count 4, did not render the circuit court's instructions prejudicially confusing.

### 1. *Count 2*

██ With regard to Rapoza's argument that the strongly corroborative instruction should have been "meshed with" the circuit court's instruction regarding the conduct element of attempted first degree assault as an included offense of count 2, we note, as an initial matter, that the jury in the present matter was instructed that it should consider the circuit court's instructions as a whole and should not single out any single instruction, phrase, or word. The jury was generally instructed regarding criminal attempt liability, including the requirement that Rapoza's conduct, under the circumstances as he believed them to be, must strongly corroborate his criminal intent in order to constitute the substantial step requisite to an attempt offense. The jury was instructed regarding the "material elements" of attempted first degree assault, as an offense included within attempted second degree murder, as charged in count 2, and, immediately thereafter, the circuit court repeated the strongly corroborative instruction:

> A person commits the offense of Attempted Assault in the First Degree if he intentionally engaged in conduct which is a substantial step in a course of conduct intended or known to cause serious bodily injury to another person.
>
> There are two material elements of the offense of Attempted Assault in the First Degree, each of which the prosecution must prove beyond a reasonable doubt. These two elements are:
>
> 1. That, on or about February 20, 1998, in the City and County of Honolulu, State of Hawaii, the defendant Wayne Rapoza intentionally engaged in conduct; and
>
> 2. That the conduct was a substantial step in a course of conduct intended or

known by the defendant to cause ... serious bodily to Manuel Galarza—

I'm just going to add in the first paragraph-to make it uniform with the rest, City and County of Honolulu, State of Hawaii. So just add that in. Okay. Moving on.

Conduct shall not be considered a substantial step unless it is strongly corroborative of defendant's intent to commit Assault in the First Degree, which is, intentionally or knowingly causing serious bodily injury to another person.

When read as a whole, rather than in isolation, the foregoing instructions adequately informed the jury that, in order to convict Rapoza of attempted first degree assault, as an included offense under count 2, the prosecution was required to prove beyond a reasonable doubt that Rapoza intentionally engaged in conduct, which, under the circumstances as he believed them to be, *see supra* at 5, constituted a substantial step in a course of conduct that Rapoza intended or knew would result in serious bodily injury to Manuel and which strongly corroborated his intent to do so. *See State v. Sawyer*, 88 Hawai'i 325, 334–35, 966 P.2d 637, 646–47 (1998) (rejecting defendant's claim that separate jury instructions regarding the "material elements" of attempted second degree murder and HRS § 705–500 criminal attempt culpability failed to direct the jury to find that the defendant intended to cause death and did not require that the jury examine defendant's conduct under the circumstances as he believed them to be at the time of the offense).

Accordingly, inasmuch as the circuit court's instructions regarding attempted first degree assault, as an included offense under count 2, were not misleading, confusing, incorrect, or erroneous, the ICA did not gravely err in rejecting Rapoza's arguments regarding the failure of the circuit court to "mesh" the strongly corroborative instruction with its instruction regarding the "conduct

element" of attempted first degree assault. We, therefore, affirm the ICA's opinion regarding this point of error, subject to the foregoing clarification.

### 2. *Count 4*

■ We agree with Rapoza that the circuit court instructed the jury in a confusing manner by including the strongly corroborative instruction in its instructions regarding the offenses included within the offense charged in count 2 but omitting the strongly corroborative instruction in a nearly identical set of included offense instructions given with respect to count 4. Because this inconsistency in the circuit court's jury instructions is presumptively harmful, and it does not affirmatively appear from the record as a whole that the error was not prejudicial, we further agree with Rapoza that the error, at the time it was committed, was not harmless beyond a reasonable doubt and, therefore, that the ICA erred in affirming his conviction with respect to count 4 on this ground.[7]

■ Nevertheless, given that the ICA vacated Rapoza's conviction with respect to count 4 on other grounds, *see supra* note 4, the error of which Rapoza complains no longer affects his substantial rights and, thus, has, on appeal, become harmless beyond a reasonable doubt.

### B. *Jury Instructions Regarding Specific Unanimity*

■ In his application, Rapoza asserts that, with respect to counts 2, 3, and 4, "[t]he fact that [he] raised the defenses of self-defense and lack of intentional or knowing state of mind" did "not 'cure' the *Arceo* defect in the present case." Indeed, the ICA itself perceived an "*Arceo* defect" in the circuit court's instructions:

In [Rapoza's] case, the [prosecution] avoided a part of the impact of the *Arceo* rule when it separated Count II [(attempt-

---

7. In order to provide guidance to the circuit court and the parties on remand, *cf. State v. Davia*, 87 Hawai'i 249, 252, 953 P.2d 1347, 1350 (1998), we note that the circuit court's instructions given with respect to count 2 are preferable because those instructions inform the jury with-

out ambiguity that, in order to convict of an attempt offense, it must find that the defendant's conduct strongly corroborated his intent to commit, not just any offense, but the particular charged or included offense attempted.

ed second degree murder of Manuel with a firearm)] from Count V [(attempted second degree murder of Manuel with an automobile)]. In light of the evidence showing that [Rapoza] fired multiple gunshots at or toward each of the three [complainants], the [prosecution] avoided another part of the impact of the *Arceo* rule when it charged only one offense per alleged [complainant] in Counts II, III, and IV. The part of the *Arceo* rule not avoided pertained to the fact that each gunshot was a separate attempted Assault in the First Degree or Reckless Endangering in the First Degree. The *Arceo* rule required the trial court to instruct the jury that if the jury decided beyond a reasonable doubt that [Rapoza] fired one or more shots at or toward a specified [complainant], all twelve of its members must agree on the same shot(s) that were fired. In [Rapoza's] case, the trial court failed to comply with the *Arceo* rule in this respect.

ICA's opinion at 19–20.

The ICA clearly erred in holding that *Arceo* was implicated by the facts of the present matter. As this court has recently parsed *Arceo*:

... In *Arceo*, we held that "when separate and distinct *culpable acts are subsumed within a single count* charging sexual assault—any one of which could support a conviction thereunder—and the defendant is ultimately convicted by a jury of the charged offense, the defendant's constitutional right to a unanimous verdict is violated" unless either the prosecution elects the specific conduct upon which it intends to rely to establish the conduct element of the offense or the trial court gives the jury a specific unanimity instruction. [84 Hawai'i] at 32–33, 928 P.2d at 874–75 (emphasis added). The *Arceo* decision dealt with a situation in which the prosecution had adduced evidence regarding independent incidents, during each of which the defendant engaged in conduct that could constitute the offense charged, and each of which could have been, but were not, charged as separate offenses. *Id.* at 21–22, 928 P.2d at 863–64. Inasmuch as these independent instances of culpable conduct were submit-

ted to the jury in a single count that charged but one offense, we held that a specific unanimity instruction was necessary to ensure that each juror convicted the defendant on the basis of the same incident of culpable conduct.

*State v. Valentine*, 93 Hawai'i 199, 208, 998 P.2d 479, 488 (2000) (emphasis in original).

In connection with his conduct of discharging the firearm, Rapoza was charged with but one offense in connection with each of the complainants. As to any given complainant, his conduct in discharging the firearm several times did not amount to "separate and distinct culpable acts," but rather betokened "a continuous, unlawful ... series of acts set on foot by a single impulse and operated by an unintermittent force" and, thus, constituted but one "breach of the criminal law." *Arceo*, 84 Hawai'i at 18, 928 P.2d at 860 (citation omitted).

In *Valentine*, the defendant, while struggling with a police officer, reached around the officer's back and clasped and tugged on the officer's holstered firearm. 93 Hawai'i at 202, 998 P.2d at 482. Valentine was convicted of the offense of attempted prohibited possession of a firearm. *Id.* We held that a specific unanimity instruction, which would have informed the jurors that they must unanimously agree on whether Valentine's (1) reaching for, (2) clasping of, or (3) tugging on the officer's firearm constituted the requisite conduct element of the offense, was not required. *Id.* at 208–209, 998 P.2d at 488–89. Unlike *Arceo*, the facts adduced by the prosecution in *Valentine* presented "no danger that the jury would be confused regarding the conduct of which Valentine was accused and that constituted the charged offense" because, *inter alia*, "the evidence concerned only a *single* episode between Valentine and [the officer], during which the two allegedly engaged in a *continuous* struggle for possession and control of the firearm." *Id.* (emphases added). *Arceo* was, therefore, inapplicable to the facts alleged and adduced in *Valentine*.

■ Indeed, the facts that animated *Arceo* further amplify the point that a specific unanimity instruction is not required if the conduct element of an offense is proved by

the prosecution to have been a series of acts constituting a continuous course of conduct and the offense is statutorily defined in such a manner as to not preclude it from being a "continuous offense." Arceo was charged with and convicted of third and first degree sexual assault in two counts, and the prosecution adduced evidence of multiple acts of "penetration" in support of each count. *Arceo*, 84 Hawai'i at 2–10, 928 P.2d at 844–852. Inasmuch as sexual assault is not a "continuous offense," because, *inter alia*, the statutes defining sexual assault offenses provided that each act of "penetration" constitutes a separate offense, *see id.* at 12–23, 928 P.2d at 854–65, we held that a specific unanimity instruction was required to ensure that the jury had unanimously agreed on the facts constituting the conduct element of each offense, to wit, the particular act of penetration—from among the several acts adduced by the prosecution in support of each of the charged offenses—that Arceo committed. *Id.* at 23–33, 928 P.2d at 865–75.

By way of contrast, neither the offense of attempted prohibited possession of a firearm, of which Valentine was convicted, *see Valentine*, 93 Hawai'i at 201 & nn. 1 & 2, 998 P.2d at 481 & nn. 1 & 2, nor the offenses of attempted second degree murder, attempted first or second degree assault, or first degree reckless endangering, of which Rapoza was tried in connection with counts 2, 3, and 4, *see supra* notes 1 through 3 and HRS §§ 707–701.5 and 707–711 (1993), are defined in such a manner as to preclude the prosecution from proving that the requisite conduct element was committed by a series of acts constituting a continuous course of conduct. *Arceo* and *Valentine* thus teach that, so long as an offense is not statutorily defined in such a manner as to provide that the requisite conduct element cannot be satisfied by a series of acts constituting a continuous course of conduct, the danger present in *Arceo*—i.e., jury confusion regarding the facts constituting the conduct element of an offense-does not arise where the prosecution alleges that the defendant committed but one offense, adduces evidence that the defendant engaged in a series of acts constituting a continuous course of conduct, and argues that the requisite conduct element is satisfied by the defendant's continuous course of conduct, albeit that the defendant's continuous course of conduct may be divisible into conceptually distinct motor activity.

As in *Valentine*, inasmuch as Rapoza's discharge of the firearm constituted but a single "continuous" offense as to each complainant, *Arceo* was not implicated, and a specific unanimity instruction—pursuant to which the jury would have been required to reach unanimity as to which particular bullet predicated conviction under each of the three counts—was not required. The question with respect to Rapoza's conduct was not, as the ICA would have it, identifying the particular shot that Rapoza fired at each complainant, but whether Rapoza separately discharged the firearm in the direction of each.

Notwithstanding its misconstruction of *Arceo*, the ICA's opinion held that the perceived "*Arceo* defect" was harmless beyond a reasonable doubt, albeit it under yet another dubious rationale.[8] Nevertheless, inasmuch as the ICA's opinion reached the correct result, to wit, affirmance of Rapoza's conviction of the included offense of attempted first degree assault in connection with count 2, we affirm that result on the alternative ground that *Arceo*, quite simply, was not implicated by the present matter. *Cf. Valentine*, 93 Hawai'i at 208–09, 998 P.2d at 488–89.

## IV. CONCLUSION

In light of the foregoing, we affirm the ICA's opinion, subject to the foregoing correction and clarification.

---

8. The defenses mounted by Rapoza in no way relieved the prosecution of its burden of establishing each element of the charged or included offenses, as well as the state of mind requisite to each element, beyond a reasonable doubt. *See* HRS §§ 701–114 (1993) (requiring proof beyond a reasonable doubt of each element of an offense and the state of mind required to establish each element). Thus, the fact that Rapoza disputed some, but not all, of the elements of the offenses charged in counts 2, 3, and 4 did not and could not dilute the prosecution's burden.