NO. 28516

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


GERARD R. LALES, Plaintiff-Appellant,
v.
WHOLESALE MOTORS COMPANY, dba JN AUTOMOTIVE GROUP,
JOHNNY MARTINEZ, and GARY MARXEN, SR.,
Defendants-Appellees.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CV. NO. 03-1-2415)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Foley and Fujise, JJ.)

        This case arises out of an employment discrimination
lawsuit brought by Plaintiff-Appellant Gerald R. Lales (Lales).
Lales filed a First Amended Complaint in the Circuit Court of the
First Circuit (Circuit Court)[1] against Defendants-Appellees
Wholesale Motors Company, dba JN Automotive Group (JN), Johnny
Martinez (Martinez), and Gary Marxen, Sr. (Marxen) (collectively,
Defendants).  Lales alleged, among other things, that during the
course of his employment by JN as a car salesperson, he was
harassed by derogatory comments about his French national origin
and ancestry made by Martinez and Marxen and was later
terminated, in retaliation for his complaints of discrimination.

---

        [1] The Honorable Randal K.O. Lee presided over the proceedings relevant
to this appeal.

The First Amended Complaint asserted six causes of action (COA): (1) discriminatory acts towards Lales, in violation of Hawaii Revised Statutes (HRS) Chapter 378[2] (COA 1); (2) retaliation for Lales's complaints of discrimination, in violation of HRS Chapter 378 (COA 2); (3) breach of employment contract (COA 3); (4) termination of Lales after he complained of national origin harassment, in violation of public policy (COA 4); (5) discriminatory acts towards Lales, in violation of Section 703 of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-2[3] (COA 5); and (6) retaliation for Lales's opposing

---

[2] At the time relevant to this case, HRS § 378-2 (Supp. 1999) provided in pertinent part:

> It shall be an unlawful discriminatory practice:
>
> (1) Because of race, sex, sexual orientation, age, religion, color, ancestry, disability, marital status, or arrest and court record:
>
>   (A) For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment;
>
>   . . .
>
> (2) For any employer, labor organization, or employment agency to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part; [or]
>
> (3) For any person whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the discriminatory practices forbidden by this part, or to attempt to do so[.]

[3] 42 U.S.C. § 2000e-2(a)(1) states as follows:

(a) Employer practices
It shall be an unlawful employment practice for an employer--

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

harassment, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a)[4] (COA 6). The Circuit Court granted summary judgment in favor of Martinez, Marxen, and JN on all COAs raised by Lales in the First Amended Complaint. The Circuit Court also found that the claims raised by Lales in his First Amended Complaint were frivolous and awarded attorney's fees of $149,667.85 and costs of $9,272.81 to Defendants.

On appeal, Lales asserts that the Circuit Court: (1) abused its discretion in failing to recuse itself on the basis of bias or the appearance of bias; (2) erred in granting summary judgment in favor of Marxen on COAs 1 and 2; (3) erred in granting summary judgment in favor of JN on COAs 1, 2, 4, 5, and 6; (4) erred in awarding attorney's fees and costs to Defendants; and (5) abused its discretion in denying Lales's post-judgment motions.

For the reasons discussed below, we: (1) conclude that the Circuit Court did not err in failing to recuse itself; (2) vacate the Circuit Court's grant of summary judgment in favor of Marxen on COAs 1 and 2; (3) vacate the Circuit Court's grant of summary judgment in favor of JN on COAs 1, 2, 4, 5, and 6; (4) vacate the Circuit Court's award of attorney's fees and costs to Defendants; (5) conclude that it is unnecessary for us to separately address Lales's claim that the Circuit Court abused its discretion in denying his post-judgment motions; and (6)

---

[4] 42 U.S.C. § 2000e-3(a) states, in pertinent part, as follows:

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

remand the case for further proceedings consistent with this Memorandum Opinion.[5]

BACKGROUND[6]

I.

Lales was employed by JN as a car salesperson for almost a year before he was terminated. While employed by JN, Lales worked with Martinez, who was his sales manager and immediate supervisor for a period of time, and was supervised by Marxen, the General Sales Manager for JN.

Lales received a termination notice, which stated that he was being terminated due to a "lack of production," and because he missed a "training meeting." Lales questioned Marxen about these reasons, and Marxen reconsidered and allowed Lales to continue working. However, the following day, Lales was again terminated for allegedly selling a car to a customer by falsely representing that it was equipped with air conditioning. The previously issued termination notice was modified by changing the date and adding the comment: "LIED TO CUSTOMER & THE USED CAR MANAGER. CAUSING US TO INSTALL AIR CONDITIONING."

After his termination, Lales jointly filed a complaint alleging national origin discrimination and retaliation with the federal Equal Employment Opportunity Commission (EEOC) and the Hawaiʻi Civil Rights Commission (HCRC). As part of his

---

[5] In the Circuit Court, Lales did not oppose the grant of summary judgment in favor of all Defendants on COA 3 for breach of employment contract and did not oppose the grant of summary judgment in favor of Martinez and Marxen on COAs 5 and 6 for claims under Title VII. On appeal, Lales does not challenge: (1) the Circuit Court's grant of summary judgment in favor of Martinez on all COAs; (2) the Circuit Court's grant of summary judgment in favor of Marxen on COAs 3 through 6; and (3) the Circuit Court's grant of summary judgment in favor of JN on COA 3. We affirm the Circuit Court's grant of summary judgment in favor of Martinez, Marxen, and JN on the COAs that Lales does not challenge on appeal; Lales has abandoned any challenge to these rulings by failing to contest them on appeal. See State v. Cummings, 101 Hawaiʻi 139, 141 n.2, 63 P.3d 1109, 1111 n.2 (2003).

[6] Because we must view the evidence in the light most favorable to the non-moving party in reviewing a trial court's decision on a motion for summary judgment, Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 104, 176 P.3d 91, 103 (2008), we present the evidence in the light most favorable to Lales.

complaint, Lales submitted a statement under penalty of perjury, in which he alleged, among other things, that Marxen "frequently referred to me as a '[F]rench bastard'[] and told me to go back to my country because America does not need French people[,]" and that Marxen told Martinez "'to go and kick the ass of that French bastard.'" According to Lales's statement, Martinez repeatedly harassed Lales by calling him "Frenchy" and telling him that "'the French are useless bastards'"; that despite his complaints about Martinez's discrimination and harassment, Lales was transferred to Martinez's sales team; and that Lales remained on Martinez's sales team for months before being allowed to transfer to a new sales team, despite protesting Martinez's continuing harassment and discrimination. Lales alleged that he was "discriminated against and harassed because of my national origin, French"; that he "worked in a hostile environment and was retaliated against for protesting the discrimination and harassment"; and that the reasons given for his termination were "pretextual."

The EEOC issued a "Determination" which stated that its investigation revealed that Lales "was harassed because of his national origin, French[,]" but that it was unable to conclude, based on the information obtained, that Lales was discharged in retaliation for opposing discrimination in the workplace. The EEOC determined that "there is reasonable cause to believe that Respondent [(identified in the Determination as JN)] discriminated against [Lales] because of his national origin." After the EEOC's Determination, the HCRC issued a "Notice of Dismissal and Right to Sue" letter to Lales.

II.

Lales subsequently filed his Complaint and the First Amended Complaint in Circuit Court. Martinez, Marxen, and JN each filed separate motions for summary judgment. Lales filed memoranda in opposition to these motions, which included his declaration. In Lales's declaration submitted in opposition to Marxen's motion for summary, Lales stated:

5

5.     . . . I was subjected to discrimination on the basis of my national origin/ancestry when my supervisor, Defendant MARXEN[,] referred to me as "fucking French bastard," "Frenchie," made derogatory remarks about French people, told my immediate supervisor, Defendant JOHNNY MARTINEZ[,] to "beat my fucken French ass," and made remarks about French people.  I was also subjected to ancestry harassment by Defendant MARTINEZ and other employees at my workplace, based upon my national origin - French.  During my work at JN AUTOMOTIVE GROUP, someone placed feces on my car, for which a police report was made.

6.     Defendant MARTINEZ was my immediate supervisor and referred to me as "French fries," "Pepe Le Pieu," I was told that I stink, that French women are just whores, "French are wimps" and other derogatory remarks.  I asked to be transferred because of Defendant MARTINEZ's behavior towards me which included threats.

Lales also asserted that Marxen prevented him from participating in a radio promotion because of his French accent.  Lales stated that he was terminated for the false reason of not selling enough vehicles, when he did not have the lowest sales at that time; that he was told he was terminated for not attending a meeting, but did not recall receiving notice of the meeting and did not know of anyone being terminated for not attending a sales meeting; and that he did not see or sign the termination notice referring to his lying to a customer about air conditioning and that he denied telling the customer the vehicle had air conditioning.  Lales declared that before he was terminated, he complained orally to Marxen, his co-workers, and others about the remarks made about his ancestry, and that he sought advice from an attorney about hostile work environment and ancestry discrimination.  He stated that he was aware of other sales representatives who were discriminated against on the basis of race or national origin by Marxen and JN.

In Lales's declaration submitted in opposition to JN's motion for summary judgment, he generally repeated these matters and asserted additional details, including that: (1) he is French and was born in France; (2) about a month before he was terminated, he complained to Marxen about being harassed and Marxen called him a "'Fucken French Bastard,'" told him to get out of Marxen's office, and told Maritnez to "'beat his F******

6

French Ass'"; (3) after questioning the initial reasons for his termination -- failing to sell enough vehicles and missing a meeting -- Marxen changed his mind and allowed Lales to continue to work; (4) the next day, Lales was terminated and told to leave for selling a truck without air conditioning; (5) he "den[ied] that [he] told the customer the truck had air conditioning" and asserted that the sales agreement did not identify the truck as having air conditioning and that the sales documents given to the customer show that the truck was sold "'as is'"; and (6) "[o]ther employees told [the customer] that the [t]ruck had air conditioning in it and were not fired"; and (7) he suffered financially and emotionally as a result of the discrimination and being fired.

### III.

The Circuit Court granted the motions for summary judgment filed by Martinez, Marxen, and JN. In granting JN's motion, the Circuit Court filed its "Findings of Fact, Conclusions of Law and Order." The Circuit Court also issued an order awarding attorney's fees and costs to Defendants.

The Circuit Court filed an Amended Final Judgment on February 5, 2007, which entered judgment in favor of Defendants and against Lales on all of Lales's COAs and awarded $149,667.85 in attorney's fees and $9,272.81 in costs to Defendants. The Circuit Court subsequently denied Lales's motion for reconsideration of the order awarding attorney's fees and costs and Lales's "Motion to Vacate, Alter or Amend Judgment, Motion for Stay of Entry of Judgment and for Rule 54(b) Certification for Appeal." This appeal followed.

### DISCUSSION

### I.

Lales argues that the Circuit Court abused its discretion in denying his motion for recusal, which was based on the Circuit Court's alleged bias against Lales's counsel. We disagree.

7

We review the denial of a motion for recusal or disqualification for abuse of discretion.  State v. Ross, 89 Hawaiʻi 371, 376, 974 P.2d 11, 16 (1998).  The Hawaiʻi Supreme Court has stated that "[d]ecisions on recusal or disqualification present perhaps the ultimate test of judicial discretion and should thus lie undisturbed absent a showing of abuse of that discretion."  Id. at 375, 974 P.2d at 15.

Over a year after Lales filed his First Amended Complaint, the case was reassigned to Judge Randal K.O. Lee (Judge Lee).  Lales filed a motion to recuse Judge Lee because before Judge Lee became a judge, he and Lales's attorney, Daphne Barbee (Barbee), had been opposing counsel in a lengthy criminal case, in which Judge Lee served as the prosecutor and Barbee served as defense counsel.  In support of this motion, Barbee submitted a declaration of counsel, in which she stated that the supreme court reversed her client's conviction after the first trial, which lasted six months, due to the prosecutor's discovery violations, and that a mistrial was granted at the retrial due to the unconstitutionality of the indictment, which was affirmed on appeal.  Barbee asserted that as the result of "the longstanding adversarial positions and lengthy litigation" between herself and Judge Lee when he served as a prosecutor, she believed that Judge Lee was biased against her, which may adversely affect her clients, including Lales.  Judge Lee denied Lales's motion for recusal.

The Hawaiʻi Supreme Court has "suggested a two-part analysis for disqualification or recusal cases."  Ross, 89 Hawaiʻi at 377, 974 P.2d at 17.  First, "HRS § 601-7 [(the judicial disqualification statute)] is applied to determine whether the alleged bias is covered by any of the specific instances prohibited therein."  Id.  Second, "[i]f the alleged bias falls outside of the provisions of HRS § 601-7, the court may then turn, if appropriate, to . . . notions of due process . . . in conducting the broader inquiry of whether 'circumstances fairly give rise to an appearance of impropriety and reasonably

8

cast suspicion on the judge's impartiality." Id. (citation, brackets, and ellipsis points omitted).

HRS § 601-7 (1993 & Supp. 2011) provides, in pertinent part:

> (b) Whenever a party to any suit, action, or proceeding, civil or criminal, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against the party or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists . . . .

(Emphasis added.) HRS § 601-7 only refers to personal bias or prejudice against a "party." However, Canon 3(E) of the Hawaiʻi Code of Judicial Conduct (Revised) (1992) (HCJC), which was in effect when Judge Lee rendered his decision, also required a judge to disqualify himself or herself where the judge has a personal bias or prejudice concerning a party's lawyer. In addition, Canon 2 of the HCJC provided that "[a] judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities."[7]

On appeal, Lales argues that Judge Lee abused his discretion in failing to recuse himself on the basis of bias or the appearance of bias. In support of this argument, Lales cites the circumstances set forth in Barbee's declaration. Lales also argues that Judge Lee's unfavorable rulings against Lales in this case demonstrate bias.

We conclude that Judge Lee did not abuse his discretion in denying Lales's motion for recusal. The circumstances cited in Barbee's declaration did not demonstrate actual bias, that Judge Lee's impartiality might reasonably be questioned, or that Judge Lee's presiding over Lales's case would create an appearance of impropriety. See Schutter v. Soong, 76 Hawaiʻi 187, 205-06, 873 P.2d 66, 84-85 (1994) ("[I]n order to establish a 'personal' bias, [movant] must be able to show 'marked personal

---

[7] The current Hawaiʻi Revised Code of Judicial Conduct contains provisions very similar to Canon 3(E) and Canon 2 of the HCJC.

feelings on both sides inflicting lingering personal stings' on [the judge]." (citation and ellipsis points omitted.)).  There was nothing to "'create in *reasonable* minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence [was] impaired.'"  Ross, 89 Hawaiʻi at 380, 974 P.2d at 20 (quoting commentary to Canon 2 of the HCJC).  The rulings by Judge Lee against Lales also do not support Lales's argument because parties "may not predicate their claims of disqualifying bias on adverse rulings, even if the rulings are erroneous."  Id. at 378, 974 P.2d at 18.

                                    II.

          Marxen moved for summary judgment against Lales.  With respect to Lales's COAs 1 and 2, which asserted claims under HRS Chapter 378, Marxen argued that he was entitled to summary judgment because: (1) the right to sue letter issued by the HCRC only covered JN and not Marxen; and (2) HRS § 378-2 only permits claims against employers and not individual employees.  In its written order, the Circuit Court granted summary judgment in favor of Marxen on Lales's HRS Chapter 378 claims on the ground that "Lales did not receive [from the HCRC] a Right to Sue [letter] against Defendant Marxen."

          On appeal, Lales asserts that the Circuit Court erred in granting summary judgment in favor of Marxen on COAs 1 and 2.  Lales argues that the Circuit Court erred in ruling that the HCRC's right to sue letter did not cover Marxen simply because Marxen's name was not in the caption of the letter.  He also argues that he is entitled to sue individual employees for violating HRS § 378-2.

          We review a trial court's grant of summary judgment de novo.  Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 104, 176 P.3d 91, 103 (2008).

>          Summary judgment is appropriate if the pleadings,
>          depositions, answers to interrogatories, and admissions on
>          file, together with the affidavits, if any, show that there
>          is no genuine issue as to any material fact and that the
>          moving party is entitled to judgment as a matter of law.  A
>          fact is material if proof of that fact would have the effect

                                    10

> of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, this court must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. (brackets omitted) (quoting Price v. AIG Hawaiʻi Ins. Co., 107 Hawaiʻi 106, 110, 111 P.3d 1, 5 (2005)).

As explained in greater detail below, we conclude that the Circuit Court erred in granting summary judgment in favor of Marxen on Lales's HRS Chapter 378 claims.

A.

The background concerning the HCRC's issuance of its right to sue letter and the Circuit Court's grant of summary judgment in favor of Marxen is as follows. After he was terminated by JN, Lales filed a complaint with both the HCRC and the EEOC by means of a declaration. In his declaration, Lales alleged that he had been discriminated against and harassed by Marxen and Martinez while employed by JN, and that he had been subjected to retaliation for protesting the discrimination and harassment. Lales's complaint identified both JN and Marxen as respondents. Lales's complaint was dual filed as Charge No. 11620 with the HCRC and Charge No. 378-A3-00050 with the EEOC.

The HCRC sent the same "Notice of Charge of Discrimination" letter (Charge Letter) to both JN and Marxen. In the caption, the Charge Letter stated:

> Re: Gerard Lales vs. Wholesale Motors, Inc. JN Automotive Group and Gary Marxen, Individually
> FEPA[8] No. 11620; EEOC No. 378-A3-00050

The Charge Letter to Marxen informed him that Lales had filed "the enclosed complaint of employment discrimination under the Hawaii Employment Practices Law and the U.S. Civil Rights Act of 1964, as amended, . . . against your organization." Pursuant to a work sharing agreement between the HCRC and the EEOC, Lales's complaint was investigated by the EEOC. Based on its investigation, the EEOC issued a "Determination" which identified

---

[8] The acronym FEPA stands for "Fair Employment Practices Agency."

11

Lales as the "Charging Party" and only JN as the "Respondent." In its Determination, the EEOC found reasonable cause to believe that Respondent harassed and discriminated against Lales because of his national origin, but was unable to conclude that he was discharged in retaliation for opposing discrimination. As the result of the EEOC's investigation and final determination of Lales's complaint, the HCRC dismissed Lales's complaint and issued a notice of right to sue to Lales, pursuant to Hawaiʻi Administrative Rules (HAR) §§ 12-46-11 (1999) and HAR 12-46-20 (1993).[9]

The caption of the "Notice of Dismissal and Right to Sue" letter (Right to Sue Letter) sent by the HCRC to Lales did not include Marxen's name and stated:

> Re:  Notice of Dismissal and Right to Sue in
>      Gerard Lales vs. Wholesale Motors, Inc. JN Automotive Group
>      <u>FEP No. 11620; EEOC No. 378-2003-00050</u>

---

[9] HAR § 12-46-11 provides in pertinent part:

(a)  The executive director [of the HCRC] shall dismiss the complaint:

. . .

(6)  If the complaint has been investigated by an appropriate local, state, or federal enforcement agency, such as the Equal Employment Opportunity Commission, Department of Housing and Urban Development, Office for Civil Rights, or Office of Federal Contract Compliance Programs, and a final determination regarding the complaint has been made by the agency[.]

HAR § 12-46-20 provides in pertinent part:

(a)  A notice of right to sue shall authorize:

(1)  A complainant alleging violations of chapters 368, 378, or 489, HRS, to bring a civil suit pursuant to section 368-12, HRS, within ninety days after receipt of the notice;

. . . .

(d) The commission's executive director shall issue a notice of right to sue:

(1)  Upon dismissal of the complaint pursuant to section 12-46-11[.]

The Right to Sue Letter indicated that JN's president, Joseph Nicolai, and Marxen received a copy of the letter, by the notation:

        c:    Joseph Nicolai, President/Director
              Gary Marxen, as an individual

at the end of the letter.  The Right to Sue Letter informed Lales that in accordance with HAR § 12-46-11, the HCRC was dismissing Lales's complaint and issuing him a right to sue letter.  It further informed Lales that he had the right to file a private lawsuit against "the Respondent in the State Circuit Court within ninety (90) days after receipt of this notice pursuant to [HRS] § 368-12[10] and [HAR] § 12-46-20."

B.

        The Circuit Court granted summary judgment in favor of Marxen on Lales's HRS Chapter 378 claims on the ground that Lales "did not receive a Right to Sue [letter] against Defendant MARXEN."  Noting the difference between the caption of the Charge Letter, which includes Marxen's name, and the caption of the Right to Sue Letter, which does not, the Circuit Court found that

---

[10]  HRS § 368-12 (1993) states:

The [Hawaii Civil Rights] commission may issue a notice of right to sue upon written request of the complainant.  Within ninety days after receipt of a notice of right to sue, the complainant may bring a civil action under this chapter.  The commission may intervene in a civil action brought pursuant to this chapter if the case is of general importance.

The Hawaiʻi Supreme Court has explained that

        Pursuant to HRS § 368-11(a) (1993), the HCRC has jurisdiction, inter alia, "over the subject of discriminatory practices made unlawful by . . . part I of [HRS] chapter 378," which includes HRS § 378-2 (1993).  HRS § 368-11(d) (1993) provides in relevant part that, "[f]or purposes of [HRS ch. 368,] 'unlawful discriminatory practice' means an unfair discriminatory practice or like terms, as may be used in . . . part I of [HRS] chapter 378."

Brown v. KFC Nat'l Mgmt. Co., 82 Hawaiʻi 226, 230 n.4, 921 P.2d 146, 150 n.4 (1996).  As a section of HRS Chapter 378, Part I, HRS § 378-2 "is incorporated by reference into the substantive and procedural provisions of HRS [Chapter] 368[.]"  Id. at 231 n.6, 921 P.2d at 151 n.6.

Marxen was "distinctively missing" from the Right to Sue Letter.

The Circuit Court subsequently issued an order awarding attorney's fees and costs to Defendants. The Circuit Court's order was based, in part, on its determination that Lales's complaint against Marxen was frivolous because Lales did not have a right to sue letter covering Marxen. Lales filed a motion for reconsideration of the Circuit Court's order granting attorney's fees and costs to Defendants. In support of his motion, Lales submitted the declaration of William Hoshijo (Hoshijo), the Executive Director of the HCRC. In his declaration, Hoshijo asserted that: (1) the omission of any reference to Marxen in the caption of the Right to Sue Letter was "an inadvertent clerical error"; (2) "[t]he case numbers [in the caption], FEPA No. 11620, EEOC No. 378-A3-00050,[11] . . . indicate that the entire case was being dismissed, including any claims against Gary Marxen, individually"; (3) the HCRC sent a copy of the Right to Sue Letter to Marxen; and (4) the Right to Sue Letter "allowed Mr. Lales to file a civil action against Gary Marxen despite the fact that the 'with regards to' line of the letter did not contain Mr. Marxen's name." The Circuit Court denied Lales's motion for reconsideration.

C.

Lales was required to exhaust administrative remedies by filing a complaint with the HCRC and obtaining a notice of right to sue from the HCRC in order to file a civil action on his HRS Chapter 378 claims. See French v. Hawaii Pizza Hut, Inc., 105 Hawaiʻi 462, 475-77, 99 P.3d 1046, 1059-61 (2004); Schefke v. Reliable Collection Agency, Ltd., 96 Hawaiʻi 408, 416 n.5, 32 P.3d 52, 60 n.5 (2001) (citing HRS §§ 368-11, 368-12, and 378-4); Ross v. Stouffer Hotel Co., 76 Hawaiʻi 454, 460, 879 P.2d 1037,

---

[11] Hoshijo explained that the initials "FEPA" stand for "Fair Employment Practices Agency" and that numbers for the HCRC Charge No. 11620 and the "FEPA" No. 11620 are the same. We note that the caption of the Right to Sue Letter used the initials "FEP" rather than "FEPA" and states the EEOC charge number as "EEOC No. 378-2003-00050" rather than "EEOC No. 378-A3-00050."

1043 (1994); Linville v. State of Hawaiʻi, 874 F. Supp. 1095, 1104 n.4 (D. Hawaiʻi 1994). We conclude that the Right to Sue Letter issued to Lales was sufficient to authorize Lales to proceed with his lawsuit against Marxen.

HRS Chapter 368, which establishes the filing of an administrative action and the issuance of notice of right to sue as prerequisites for Lales to bring a civil action on his HRS Chapter 378 claims in court, is "a remedial statute designed to enforce civil rights protections and remedy the effects of discrimination," and therefore, "should be liberally construed in order to accomplish that purpose." Furukawa v. Honolulu Zoological Soc'y, 85 Hawaiʻi 7, 17, 936 P.2d 643, 653 (1997); see also Ramirez v. Nat'l Distillers & Cem. Corp., 586 F.2d 1315, 1321 (9th Cir. 1978) (concluding that in keeping with the remedial goals of the Civil Rights Act of 1964, the statute, the procedural framework, and the pleadings must be liberally construed in favor alleged victims of discrimination and that "[p]rocedural technicalities should not be employed to impede a Title VII claimant from obtaining a judicial hearing on the merits"). The Hawaiʻi Supreme Court has held that construing a prior statute of limitations provision in HRS Chapter 378 to favor "adjudication on the merits is more consistent with the remedial purposes of Part I of HRS Chapter 378 than one likely to bar potentially meritorious claims." Ross, 76 Hawaiʻi at 462, 879 P.2d at 1045.

The purpose of requiring the filing of a prior administrative complaint is to provide notice to the charged party of the claim and to give the administrative agency the opportunity to investigate and conciliate the claim. See Woodman v. Runyon, 132 F.3d 1330, 1342 (10th Cir. 1997) (explaining the purpose of the requirement of exhaustion of administrative remedies with respect to Title VII claims); Martin v. Fisher, 13 Cal. Rptr. 2d 922, 924 (Cal. Ct. App. 1992) (explaining the purpose of the exhaustion requirement under California's employment discrimination law). Given the function served by the

15

administrative complaint and the remedial goals of the Civil Rights Act of 1964, federal courts have liberally construed the scope of a Title VII plaintiff's administrative claim to permit the filing of a discrimination lawsuit, in response to arguments that the plaintiff failed to exhaust administrative remedies. See Sosa v. Hiraoka, 920 F.2d 1451, 1456-57 (9th Cir. 1990); B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1100-03 (9th Cir. 2002). Thus, even where a party is not named in an EEOC charge, federal courts have permitted a Title VII lawsuit to be brought against that party as long as the party not named in the EEOC charge was involved in the acts giving rise to the EEOC charge or should have anticipated that the claimant would name the party in a Title VII lawsuit. Sosa, 920 F.2d at 1458-59; E.E.O.C. v. Nat'l Educ. Ass'n, Alaska, 422 F.3d 840, 847 (9th Cir. 2005).

In Martin v. Fisher, 13 Cal. Rptr. 2d 922, the California Court of Appeals considered a situation very similar to this case under California's employment discrimination statutory scheme. Martin jointly filed a discrimination complaint against her employer, Texaco Refining and Marketing Inc. (TRMI), with the EEOC and the analogous California administrative agency, the Department of Fair Employment and Housing (DFEH). Id. at 922. The administrative complaint did not name Fisher as a charged party, but identified Fisher, Martin's functional superior at TRMI, as the individual who had taken some of the discriminatory actions against Martin. Id. at 922-23. Martin received right to sue letters from the EEOC and the DFEH which named only TRMI and not Fisher. Id. at 923. The trial court dismissed Martin's lawsuit against Fisher on the grounds of failure to exhaust administrative remedies. Id. at 922.

On appeal, the California Court of Appeals framed the issue as whether Martin's discrimination suit was barred "where [Fisher] was named in the body of [Martin's] administrative complaint, but not as a charged party." Id. at 923. In holding that Martin's lawsuit against Fisher was not barred, the court

16

reasoned as follows:

> The function of an administrative complaint is to
> provide the basis for an investigation into an
> employee's claim of discrimination against an
> employer, and not to limit access to the courts.  A
> strict rule [that only a party named in the caption of
> the administrative suit may be sued, regardless of any
> other circumstances,] would harm victims of
> discrimination without providing legitimate protection
> to individuals who are made aware of the charges
> through the administrative proceeding.  If they are
> described in the charge as the perpetrators of the
> harm, they can certainly anticipate they will be named
> as parties in any ensuing lawsuit.
>
> . . . .
>
> Similarly, the right-to-sue letter, while triggering
> certain rights in the plaintiff, is primarily notification
> that no further administrative action will be taken in the
> case.  Although its issuance is a prerequisite to judicial
> action . . . , we do not believe the plaintiff should be
> bound by the caption of the administrative charge, which is
> reflected in the right-to-sue letter.

Id. at 924.

The reasoning in Martin is consistent with the Hawaiʻi Supreme Court's liberal construction of Hawaiʻi's employment discrimination statutes to accomplish their remedial purposes. In this case, Lales's administrative complaint, which was jointly filed with the HCRC and the EEOC, identified "Gary Marxen, Individually" as a respondent and alleged that Marxen harassed and discriminated against Lales on the basis of his national origin. The record reflects that Marxen was notified of and served with Lales's administrative complaint. Thus, Marxen had ample and specific notice of Lales's discrimination claim against Marxen and should clearly have anticipated that Lales would name him in a discrimination lawsuit. In addition, Marxen was named in the caption of the Charge Letter; the caption of the Right to Sue Letter referred to Lales's discrimination cases before the HCRC and EEOC, "FEP No. 11620; EEOC No. 378-2003-00050"; and Marxen does not dispute that he was mailed a copy of the Right to Sue Letter. Indeed, Lales presents a more compelling case for allowing his lawsuit to proceed than that presented in Martin. Lales's administrative complaint actually named Marxen as a

17

respondent, whereas Martin's complaint did not name Fisher as a charged party, and Marxen received a copy of the complaint and Right to Sue Letter, while Fisher was not served with either the complaint or right to sue letter, but learned of the charges through his employment and his interview by an EEOC representative.  See Martin, 13 Cal. Rptr. 2d at 922-23.

The purpose of a right to sue letter is to provide notice that no further administrative action will be taken, that the complainant has exhausted his or her administrative remedies, and that the time for bringing suit has started to run.  See HRS § 368-12; Martin, 13 Cal. Rptr. 2d at 924; Lacy v. Chrysler Corp., 533 F.2d 353, 356-59 (8th Cir. 1976).  Neither the relevant statutes nor the HCRC rules require the HCRC to name a person in the caption of the notice of right to sue in order for that person to be sued in court for discrimination.  Under the circumstances of this case, to deny Lales the ability to pursue his complaint in Circuit Court because the Right to Sue Letter did not specifically name Marxen in the caption would elevate form over substance and would be inconsistent with the remedial purposes of Hawaiʻi's employment discrimination statutes.  See Furukawa, 85 Hawaiʻi at 17, 936 P.2d at 653; Ross, 76 Hawaiʻi at 462, 879 P.2d at 1045; Martin, 13 Cal. Rptr. 2d at 924; B.K.B., 276 F.3d at 1100-03.  We therefore conclude that the Circuit Court erred in granting summary judgment in favor Marxen on COAs 1 and 2, Lales's HRS Chapter 378 claims, on the ground that the HCRC's Right to Sue Letter did not authorize Lales to file suit against Marxen.

D.

Because the Circuit Court granted summary judgment on this ground, it did not address Marxen's alternative argument that Marxen was not subject to liability in his individual capacity under HRS § 378-2.  If Lales was not entitled to sue Marxen individually under HRS § 378-2, then the Circuit Court would have been correct in granting summary judgment in favor of Marxen on COAs 1 and 2, albeit on a different ground than it

18

asserted.  We therefore consider whether Lales was entitled to bring suit against Marxen individually under HRS § 378-2.

Citing federal cases holding that liability under Title VII only extends to employers and not to employees in their individual capacities, e.g., <u>Miller v. Maxwell's Int'l. Inc.</u>, 991 F.2d 583, 587-88 (9th Cir. 1993), Marxen argues that HRS Chapter 378 and HRS § 378-2 should similarly be construed as only subjecting employers, and not individual employees, to liability for discriminatory acts.[12]  We disagree.  As explained below, we conclude that employees are subject to individual liability under HRS § 378-2 when they are agents of an employer or when they aid, abet, incite, compel, or coerce prohibited discriminatory practices.  Accordingly, Marxen was not entitled to summary judgment on Lales's HRS Chapter 378 claims on the ground that HRS § 378-2 only permits claims against employers, and not employees in their individual capacities.

We start with the language of the statute.  HRS § 378-2 provided in relevant part:

> It shall be an unlawful discriminatory practice:
>
> (1)   Because of race, sex, sexual orientation, age, religion, color, ancestry, disability, marital status, or arrest and court record:
>
>     (A)   For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment;
>
>     . . .
>
> (2)   For any employer . . . to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part; [or]

---

[12] The Circuit Court granted summary judgment in favor on Marxen on Lales's Title VII claims, COAs 5 and 6, based on Lales's concession that Marxen was not subject to individual liability under Title VII.  As noted in footnote 5, supra, Lales does not challenge the Circuit Court's grant of summary judgment in favor of Marxen on COAs 5 and 6.

> (3)     For any person whether an employer, employee, or not,
>         to aid, abet, incite, compel, or coerce the doing of
>         any of the discriminatory practices forbidden by this
>         part, or to attempt to do so[.]

HRS § 378-1 (1993), in turn, (1) defines "employer" to mean "any person, including the State or any of its political subdivisions and any agent of such person, having one or more employees, but shall not include the United States" (emphasis added); and (2) defines "person" to mean "one or more individuals, and includes, but is not limited to, partnerships, associations, or corporations, legal representatives, trustees, trustees in bankruptcy, receivers, or the State or any of its political subdivisions."

Therefore, under HRS § 378-2, an employer, which is broadly defined to include "any person . . . having one or more employees" and "any agent of such person," is subject to liability for engaging in the specified unlawful discriminatory practices. A plain reading of the statutory provisions supports the conclusion that an individual employee, who is an agent of an employer, can be held individually liable as an "employer." Moreover, HRS § 378-2(3) clearly provides that "any person[,] whether an employee, employer, or not[,]" is subject to individual liability for aiding and abetting the prohibited discriminatory practices. Thus, the statutory language contradicts Marxen's contention that HRS § 378-2 does not permit claims against employees in their individual capacities.

In Sherez v. State of Hawai'i Dept. of Educ., 396 F. Supp. 2d 1138 (D. Hawaiʻi 2005), the United States District Court for the District of Hawaiʻi considered the question of whether employees are subject to liability in their individual capacities under HRS § 378-2. Noting a split among the judges of the District of Hawaiʻi on this issue, the court in Sherez held that under HRS § 378-2, employees are subject to individual liability when they act as agents of an employer. Id. at 1146 & n.7. The court employed the following reasoning, with which we agree,

in analyzing the Hawaiʻi Legislature's intent in using the term "agent" in the definition of "employer":

> [HRS] Chapter 378 casts liability for employment discrimination broadly. It applies to the smallest employers, even individual employers who employ only one other person. In addition, [HRS § 378-2(3)] imposes individual liability on those who aid, abet, or incite employment discrimination. Aider and abettor liability extends to everyone, even those not employed or affiliated with the discriminatory employer. It is hard to imagine that the Hawaii legislature meant to impose liability on small employers and on individuals who aid and abet discrimination, yet at the same time meant to immunize the individual agents who actually engage in unlawful discrimination. Thus, taken in context, the language "any person . . . including . . . any agent of such person" in the definition of employer contemplates that agents are individually liable as employers under the statute.

Id. at 1147 (ellipsis points in original).

The Sherez court also explained, in a manner we find persuasive, why federal precedents that had construed Title VII as not subjecting employees to individual liability should not be followed in construing HRS Chapter 378.

> As discussed above, individual employees are not subject to liability under Title VII which, like [HRS] chapter 378, imposes liability on employers for employment discrimination. Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 587 (9th Cir.1993). Miller interpreted the agency language in the Title VII definition of "employer" as imposing *respondeat superior* liability on the employer for its agents' acts, while not imposing individual liability on the agent. However, Title VII differs from chapter 378 in relevant detail: federal law imposes liability only on employers with fifteen or more employees while chapter 378 imposes liability on employers with one or more employees. Compare HRS § 378-1 with 42 U.S.C. § 2000e-2.
>
> Miller viewed the fifteen or more employee requirement in Title VII critical in determining Congressional intent with respect to individual liability. The court reasoned that "if Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees." Id. In contrast, HRS § 378-1 does not limit employer liability to larger employers. Additionally, unlike Title VII, chapter 378 imposes aider and abetter liability on individuals. HRS § 378-2(3). As discussed above, construing "employer" to include individual agents of employers is entirely consistent with the statutory scheme of chapter 378. Because of these crucial differences between the levels [of] liability imposed by Title VII and chapter 378, the court does not find Title VII precedent helpful in interpreting the HRS § 378-1 definition of employer.

Id. at 1148 (brackets omitted).

21

Although the Hawaiʻi Supreme Court has not directly addressed the issue of liability of employees in their individual capacities presented by this appeal, decisions of the Hawaiʻi Supreme Court support the conclusion that liability under HRS § 378-2 extends to employees in their individual capacities.  In Steinberg v. Hoshijo, 88 Hawaiʻi 10, 960 P.2d 1218 (1998), the complainant and Dr. Steinberg were both employed by a medical clinic, and Dr. Steinberg was the complainant's supervisor.  Id. at 11, 960 P.2d at 1219.  The Hawaiʻi Supreme Court affirmed the circuit court's order, which upheld a decision of the HCRC that Dr. Steinberg had subjected the complainant to sexual harassment, in violation of HRS § 378-2, and was liable for compensatory and punitive damages.  Id.  The court noted that "[t]he parties do not dispute that Dr. Steinberg was an agent of the Clinic and therefore an 'employer' as defined by HRS § 378-1."  Id. at 18 n.10, 960 P.2d at 1226 n.10; see also Sam Teague, Ltd. v Hawaiʻi Civil Rights Comm'n, 89 Hawaiʻi 269, 275-77, 971 P.2d 1104, 1110-12 (1999) (concluding that the HCRC properly allowed complainant to amend her complaint to add owner of employer as a party in his personal capacity because HRS § 378-1 defines "employer" to include agents of persons having one or more employees).

In Schefke v. Reliable Collection Agency, Ltd., 96 Hawaiʻi 408, 32 P.3d 52, the plaintiff sued his two corporate employers as well as the individual owners, Jonathan and Fred Kirshner, of one of the corporate employers.  Id. at 415, 417, 32 P.3d at 59, 61.  The Hawaiʻi Supreme Court overturned the trial court's grant of directed verdicts in favor of Jonathan and Fred as to their liability in their individual capacities on plaintiff's claim of retaliation in violation of HRS § 378-2.  Id. at 441-42, 32 P.3d at 85-86.  The court rejected Fred's claim that he could not be held personally liable for the alleged retaliatory decision because the decision had ultimately been left to Jonathan.  The court held that given the broad language of HRS § 378-2(3), which "provides that '*any person* whether an employer, employee, or not' can be held liable for 'aid[ing],

22

abet[ing], *incit[ing]*, compel[ling], or coerc[ing] the doing of any discriminatory practices forbidden by this part,'" Fred could be held liable for inciting the discriminatory decision, even if he was offering advice, and not making any decision. Id. at 442, 32 P.3d at 86 (brackets in original). The supreme court concluded that the trial court erred in granting the directed verdicts because based on the evidence presented at trial, the jury could have found discriminatory retaliation by Jonathan and Fred in violation of HRS § 378-2(3). Id.

Based on the plain language of the relevant statutory provisions and Hawaiʻi Supreme Court decisions, we conclude that Lales was entitled to bring suit against Marxen individually under HRS § 378-2.

III.

Lales argues that the Circuit Court erred in granting summary judgment in favor of JN on Lales's COA 1 (HRS Chapter 378 harassment), COA 2 (HRS Chapter 378 retaliation), COA 4 (termination in violation of public policy), COA 5 (Title VII harassment), and COA 6 (Title VII retaliation). We agree.

A.

We first address the Circuit Court's grant of summary judgment in favor of JN on COAs 1 and 5, Lales's HRS Chapter 378 and Title VII claims for harassment based on ancestry and national origin discrimination. Lales argues that the Circuit Court erred in granting summary judgment in favor of JN on these claims because: (1) the Circuit Court erroneously applied the legal test for vicarious liability based on harassment by a co-worker, rather than harassment by a supervisor; (2) the Circuit Court erroneously applied the affirmative defense set forth in Faragher v. City of Boca Raton, 524 U.S. 775 (1998), to Lales's HRS Chapter 378 harassment claim; and (3) the Circuit Court failed to view the evidence in the light most favorable to Lales and instead based its grant of summary judgment on improper credibility determinations and findings on disputed facts. As explained below, we conclude that the Circuit Court erred in granting summary in favor of JN on COAs 1 and 5.

23

1.

HAR § 12-46-175 (1990), the HCRC rule for harassment based on ancestry, provides, in relevant part, as follows:

**Harrassment.** (a) Harassment on the basis of ancestry is a violation of chapter 378, HRS.

(b) Ethnic slurs and other verbal or physical conduct relating to an individual's ancestry constitute harassment when this conduct:

(1)  Has the purpose or effect of creating an intimidating, hostile, or offensive working environment;

(2)  Has the purpose or effect of unreasonably interfering with an individual's work performance; or

(3)  Otherwise adversely affects an individual's employment opportunity.

Similar standards apply to hostile work environment harassment based on national origin under Title VII, which requires a plaintiff to prove:

(1) that he [or she] belongs to a protected group, (2) that he [or she] has been subject to unwelcome harassment, (3) that the harassment was based on a protected characteristic of the employee, such as . . . national origin, (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability.

Piquion v Walgreen Co., 369 F. Supp. 2d 1339, 1346 (S.D. Fla. 2005).

HAR § 12-46-175 also addresses the circumstances under which an employer may be held vicariously liable for the acts of its employees, and it provides, in relevant part, as follows:

(c) The employer has an affirmative duty to maintain a working environment free of harassment on the basis of ancestry.

(d) An employer is responsible for its acts and those of its agents and supervisory employees with respect to harassment on the basis of ancestry regardless of whether the specific acts complained of were authorized or even forbidden by the employer and regardless of whether the employer knew or should have known of their occurrence. The commission will examine the circumstances of the particular employment relationship and the job functions performed by the individual in determining whether an individual acts in a supervisory or agency capacity.

> (e) With respect to conduct between fellow employees, an employer shall be responsible for acts of harassment in the workplace on the basis of ancestry, where the employer, its agent, or supervisory employee, knows or should have known of the conduct, unless the employer can show that it took immediate and appropriate corrective action.

For purposes of imposing vicarious liability on an employer for ancestry harassment, HAR § 12-46-175 distinguishes between harassment by a co-worker and harassment by a supervisor. With respect to harassment by a supervisor, HAR § 12-46-175(d) imposes "strict" vicarious liability on the employer. On the other hand, with respect to harassment by a co-worker, HAR § 12-46-175(e) imposes vicarious liability on an employer if it knows or should have known of the harassing conduct and fails to take corrective action.

In <u>Faragher</u> and the companion case of <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742 (1998), the United States Supreme Court addressed the circumstances under which an employer could be held vicariously liable under Title VII for sexual harassment committed by a supervisory employee against a subordinate. The Court in <u>Faragher</u> held as follows:

> In order to accommodate the principle of vicarious liability for harm caused by misuse of supervisory authority, as well as Title VII's equally basic policies of encouraging forethought by employers and saving action by objecting employees, we adopt the following holding in this case and in <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), also decided today. An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. <u>When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages</u>, subject to proof by a preponderance of the evidence, <u>see</u> Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure

> to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment. See Burlington, 524 U.S., at 762-763, 118 S.Ct., at 2269.

Faragher, 524 U.S. at 807-08 (emphases added).

Thus, under Faragher, an employer is subject to "strict" vicarious liability for harassment by a supervisor, but may assert the articulated affirmative defense, except "when the supervisor's harassment culminates in a[n] [adverse] tangible employment action." Id. at 808.

2.

In granting summary judgment in favor of JN on Lales's harassment claims, the Circuit Court relied on the Hawaiʻi Supreme Court's decision in Arquero v. Hilton Hawaiian Village LLC, 104 Hawaiʻi 423, 91 P.3d 505 (2004), for the proposition that to establish employer liability, the harassed employee must show that the employer knew or should have known of the harassment and failed to take appropriate corrective action. We conclude that such reliance was misplaced because Arquero involved co-worker harassment, and not harassment by a supervisor.[13] Here, Lales alleged that he was subjected to repeated acts of harassment based on his ancestry and national origin by Marxen who was his supervisor.

The Circuit Court also erred in applying the affirmative defense set forth in Faragher because as Faragher itself makes clear, the affirmative defense does not apply "where a supervisor's harassment culminates in tangible employment

---

[13] In Arquero, plaintiff sued her employer, claiming that she had been sexually harassed by a co-worker. In support of the standards it applied to evaluate the employer's liability, the Hawaiʻi Supreme Court cited the HCRC rules for sexual harassment, HAR § 12-46-109 (1990), which basically applies the same distinction between an employer's vicarious liability for harassment by a co-worker and harassment by a supervisor as the HCRC rules for ancestry harassment. See Arquero, 104 Hawaiʻi at 428 n.7, 91 P.3d at 510 n.7. Because Arquero involved harassment by a co-worker, the Hawaiʻi Supreme Court did not consider HAR § 12-46-109(c), which imposes "strict" vicarious liability on an employer for sexual harassment by a supervisor.

action, such as a discharge . . . ."  Here, because the alleged harassment by Marxen did culminate in Lales's discharge, the Faragher affirmative defense did not apply.  We note that the parties argue over, and several amicus curiae briefs were filed on, the question of whether this court should apply the Faragher affirmative defense to harassment claims brought under HRS Chapter 378.  We decline to decide this question.  Because the requirements set forth in Faragher for applying the Faragher affirmative defense have not been met in this case, we need not address what the result would be in a different case where a supervisor's alleged harassment does not culminate in tangible employment action.

Where a supervisor's harassment culminates in tangible employment action, both Faragher and HAR § 12-46-175 impose "strict" vicarious liability on an employer.  Accordingly, the Circuit Court erred in applying the Arquero standards for co-worker harassment and the Faragher affirmative defense in granting summary judgment in favor of JN.[14]

3.

In ruling on JN's motion for summary judgment, the Circuit Court was required to view all the evidence, including the inferences drawn therefrom, in the light most favorable to Lales, the non-moving party.  See Kamaka, 117 Hawaiʻi at 104, 176 P.3d at 103.  Lales argues that the Circuit Court failed to view the evidence in the light most favorable to him and instead drew inferences and made credibility determinations against him.  We agree.

For example, the Circuit Court supported its rejection of Lales's assertion that he was subjected to numerous abusive

---

[14] Relying in part on Faragher, Defendants, supported by several amicus curiae, also argue that HAR § 12-46-175(d), which imposes "strict" vicarious liability on employers for harassment by supervisors, is *ultra vires* as not within the HCRC's rulemaking authority.  We do not address the asserted argument because it is directed at situations where the Faragher affirmative defense would apply, a situation not presented by this case.  We also decline to address the argument because Defendants did not challenge HAR § 12-46-175(d) on *ultra vires* grounds in the Circuit Court.

27

verbal comments by Marxen regarding Lales's French ancestry and national origin, which Lales set forth in his declaration filed in opposition to JN's motion for summary judgment, by finding that "Lales's credibility is questionable . . . ."[15]  In addition, the Circuit Court rejected Lales's assertion, also contained in his declaration in opposition to JN's motion for summary judgment, that Lales opposed Marxen's suggestion that Lales call himself "Frenchy" and use that name on Lales's business cards because Lales felt that this was offensive.  The Circuit Court cited conflicting evidence presented on this issue by JN and found that Lales's credibility was questionable.

We conclude that when viewed in the light most favorable to Lales, the matters set forth in Lales's declaration in opposition to JN's motion for summary judgment, which presented evidence that Lales was subjected to persistent, derogatory, and unwelcome statements and comments about his ancestry and national origin, established that there were genuine issues of material fact regarding his claims against JN for harassment based on ancestry and national origin discrimination. Therefore, the Circuit Court erred in granting summary judgment in favor of JN on COAs 1 and 5.

B.

We also conclude that the Circuit Court erred in granting summary judgment in favor of JN on COAs 2 and 4, Lales's HRS Chapter 378 and Title VII claims for retaliation.

The Hawaiʻi Supreme Court has adopted a three-part test for retaliation claims under HRS § 378-2(2) that is consistent with the test applicable to such claims under Title VII.  Under the test adopted by the Hawaiʻi Supreme Court for retaliation claims under HRS § 378-2(2):

> (1) the plaintiff must first establish a prima facie case of such retaliation by demonstrating that (a) the plaintiff (i)

---

[15] The Circuit Court's finding that Lales's credibility was questionable was based on inferences it drew from Lales's answers to requests for admissions that did not directly refute Lales's claims.

> "has opposed any practice forbidden by [HRS chapter 378, Employment Practices, Part I, Discriminatory Practices] or (ii) has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part," HRS § 378-2(2), (b) his or her "employer, labor organization, or employment agency [has] . . . discharge[d], expel[led], or otherwise discriminate[d] against the plaintiff," id., and (c) "a causal link [has] exist[ed] between the protected activity and the adverse action"; (2) if the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action; and (3) if the defendant articulates such a reason, the burden shifts back to the plaintiff to show evidence demonstrating that the reason given by the defendant is pretextual.

Schefke, 96 Hawaiʻi at 426, 32 P.3d at 70 (case citations omitted; brackets in original).[16]

In support of its motion for summary judgment, JN presented evidence in the form of declarations and deposition testimony of the following: (1) Lales never submitted a complaint to Nicolai, JN's president, or other management personnel regarding discriminatory treatment; (2) Lales introduced himself as "Frenchy," asked people at JN to call him "Frenchy," and used the name "Frenchy" on documents he submitted to JN; (3) Marxen was not biased against Lales due to his French national origin, Marxen would not have hired Lales if he were biased, and Marxen did not harass or witness anyone else harassing Lales; (4) Lales was initially terminated for his low sales production and missing a mandatory meeting; (5) this termination was withdrawn based on

---

[16] In Schefke, the Hawaiʻi Supreme Court described the test for retaliation claims under Title VII as follows:

> Under Title VII . . . federal courts have held that, in a prima facie case of retaliation, "an employee must show that (1) he [or she] engaged in a protected activity; (2) his [or her] employer subjected him [or her] to an adverse employment action; and (3) a causal link exist[ed] between the protected activity and the adverse action." "If a plaintiff has asserted a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision." "If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive."

Schefke, 96 Hawaiʻi at 425, 32 P.3d at 69 (citations and footnote omitted; brackets in original).

Lales's pleas, but was reinstated upon discovery that Lales had misrepresented to customers that a vehicle sold by Lales had air conditioning, when it did not; (6) the customers, husband and wife, advised JN that Lales lied about the vehicle containing air conditioning and the wife stated that Lales introduced himself as "Frenchy."

Lales submitted a declaration in opposition to JN's summary judgment motion, which presented the following evidence: (1) Lales is French; (2) Marxen, his supervisor, and Martinez, his immediate supervisor for a period of time, repeatedly made derogatory comments to Lales about, and used derogatory terms to describe, Lales's French ancestry and national origin; (3) shortly before his termination, Lales verbally complained to Marxen about the ancestry and national origin harassment; (4) Marxen told Lales "'You Fucking French Bastard, get out of my office'"; (5) Lales was initially told he was being terminated for not selling enough cars and for missing a meeting, even though other employees had lower sales, he had not received notice of the meeting, and was not aware of other employees being terminated for missing a meeting; (6) after Lales questioned Marxen about the reasons given for his termination, Lales was allowed to continue to work, but the next day, Lales was terminated for purportedly lying to a customer about air conditioning; (7) Lales denied telling the customer that the car had air conditioning and asserted that other JN employee had told the customer that the car had air conditioning, but were not fired; and (8) he suffered financially and emotionally as a result of the discrimination and being fired.

In granting summary judgment in favor of JN on Lales's retaliation claims, the Circuit Court concluded that there were no genuine issues of material fact and that JN was entitled to judgment as a matter of law because: (1) Lales failed to prove a causal link between the protected activity and the adverse action, an element of his prima facie case; and (2) Lales failed

to prove that JN's proffered reason for termination was pretextual.

We conclude that given the conflicting evidence presented by the parties, the Circuit Court erred in granting summary judgment in favor of JN on Lales's retaliation claims. When viewed in the light most favorable to Lales, he presented sufficient evidence to establish a prima facie case of retaliation by showing that: (1) he verbally complained to Marxen about harassment based on Lales's ancestry and national origin, see O'Neal v. Ferguson Const. Co., 237 F.3d 1248, 1255 (10th Cir. 2001) ("Informal complaints to superiors constitute protected activity."); Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 506 (9th Cir. 2000) (same); (2) JN terminated Lales, thereby subjecting Lales to an adverse employment action; and (3) his termination was within a month of his complaints to Marxen regarding the harassment. See Suzuki v. State, 119 Hawaiʻi 288, 302, 196 P.3d 290, 304 (App. 2008) ("Causation in retaliation cases 'can be inferred from timing alone where an adverse employment action follows on the heels of protected activity.'" (quoting Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002)); Passantino, 212 F.3d at 507 ("[W]hen adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred. Moreover, . . . evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant." (citations omitted)). In addition, Lales presented sufficient evidence to establish genuine issues of material fact regarding whether JN's proffered reasons for Lales's termination were pretextual. The Circuit Court erred in granting summary judgment in favor of JN on Lales's COAs 2 and 4.

C.

Lales contends that the Circuit Court erred in granting summary judgment in favor of JN on Lales's COA 4 for termination in violation of public policy because JN did not address this

31

claim in its motion for summary judgment and thus Lales was not given a fair opportunity to respond.  A trial court is normally precluded from granting summary judgment on a ground to which the nonmovant was given "either an inadequate opportunity or no opportunity to respond."  Edwards v. Honeywell, Inc., 960 F.2d 673, 674 (7th Cir. 1992).  On the other hand, to the extent that Lales's COA 4 is based on public policy derived from the provisions of HRS Chapter 378, it would be barred.  See Takaki v. Allied Machinery Corp., 87 Hawaiʻi 57, 63, 951 P.2d 507, 513 (App. 1998) ("If . . . the statutory or regulatory provisions which evidence the public policy themselves provide a remedy for the wrongful discharge, provision of a further remedy under the public policy exception is unnecessary." (block quote format, citation, and emphasis omitted)).

In this case, the substance of Lales's public policy claim is unclear because the parties did not address it in connection with JN's motion for summary judgment.  In light of the undeveloped state of the record regarding Lales's COA 4 and our decision to remand the case for further proceedings on other COAs asserted by Lales, we vacate the Circuit Court's grant of summary judgment in favor of JN on COA 4.

IV.

The Circuit Court's decision to award attorney's fees and costs to Defendants was based in significant part on its finding that Lales made claims against Marxen and JN that were frivolous, and thus attorney's fees and costs were authorized by HRS § 607-14.5 (Supp. 2011).  The Circuit Court found that Lales made frivolous claims against Marxen and JN in that: (1) Marxen was not entitled to file suit against Marxen on Lales's HRS Chapter 378 discrimination claims because the Right to Sue Letter issued by the HCRC did not name Marxen in the caption; and (2) Lales's claims against JN were not reasonably supported by the facts and law as evidenced by the Circuit Court grant of summary judgment in favor of JN on all of Lales's COAs.  Our analysis in this case and decision to vacate the Circuit Court's grant of

32

summary judgment in favor of Marxen and JN on numerous COAs asserted by Lales undermines the principal bases for the Circuit Court award of attorney's fees and costs in favor of Defendants.[17]  Accordingly, we vacate the Circuit Court's award of attorney's fees and costs to Defendants.

V.

We need not separately address Lales's claim that the Circuit Court abused its discretion in denying his post-judgment motions.  This is because in support of this claim, Lales simply incorporates the arguments he previously made with respect to his other points of error.

CONCLUSION

For the foregoing reasons, (1) we vacate the Circuit Court's Amended Final Judgment to the extent that it (a) entered judgment in favor of Marxen on COAs 1 and 2, (b) entered judgment in favor of JN on COAs 1, 2, 4, 5, and 6, and (c) awarded attorney's fees and costs to Defendants; (2) we affirm the Amended Final Judgment to the extent that it (a) entered judgment in favor of Martinez, (b) entered judgment in favor Marxen on COAs 3, 4, 5, and 6, and (c) entered judgment in favor of JN on COA 3; and (3) we remand the case for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawaiʻi, May 9, 2012.


On the briefs:

Daphne E. Barbee
for Plaintiff-Appellant                    Chief Judge

Roger S. Moseley
Renee M. Furuta
(Moseley Biehl Tsugawa Lau &               Associate Judge
    Muzzi LLLC)
for Defendants-Appellees


                                           Associate Judge

---

[17] We also note that the Circuit Court did not have the benefit of our analysis in this Memorandum Opinion in evaluating Martinez's request for attorney's fees and costs.

33

On the briefs (continued):

Wesley M. Fujimoto
Bryan P. Andaya
Ryan E. Sanada
(Imanaka Kudo & Fujimoto LLLC)
for Amicus Curiae
Hawaiʻi Employers Council

John Ishihara
Hawaiʻi Civil Rights Commission
Department of Labor and
    Industrial Relations
for Amicus Curiae
Hawaiʻi Civil Rights Commission

Shelton G.W. Jim On
Henry F. Beerman
(Jim On & Beerman)
for Amicus Curiae
Hawaii Automobile Dealers Assn.

John L. Knorek
(Torkildson, Katz, Moore &
    Hetherington)
for Amicus Curiae
The Chamber of Commerce of Hawaii

Ronald Albu
(Albu & Albu)
for Amicus Curiae
National Employment Lawyers
    Association- Hawaiʻi Chapter